## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL A. PEREIRA, individually and as Mayor of the VILLAGE OF MINEOLA, THE VILLAGE OF MINEOLA, JAMES J. MCHUGH, JR., COUNCILMAN DENNIS J. WALSH, individually and as member of the Town Board of the Town of North Hempstead, AND COUNCILMAN DAVID A. ADHAMI, individually and as member of the Town Board of the Town of North Hempstead, <br><br>          Plaintiffs-Petitioners, <br><br> v. <br><br> TOWN OF NORTH HEMPSTEAD, TOWN BOARD OF THE TOWN OF NORTH HEMPSTEAD and THE NASSAU COUNTY BOARD OF ELECTIONS, <br><br>          Defendants-Respondents. | **COMPLAINT** <br><br> Case No. _____ -CV-_____ |

Plaintiffs-Petitioners, PAUL A. PEREIRA, individually and as Mayor of the VILLAGE OF

MINEOLA, THE VILLAGE OF MINEOLA, JAMES J. MCHUGH, JR., COUNCILMAN DENNIS

J. WALSH, individually and as member of the Town Board of the Town of North Hempstead, and

COUNCILMAN DAVID A. ADHAMI, individually and as member of the Town Board of the Town

of North Hempstead, by their attorneys, Messina Perillo Hill LLP, allege as follows:

### NATURE OF THE ACTION

1.      This is a hybrid action/special proceeding which is brought pursuant the 14th

Amendment of the United States Constitution and Article I §1 and 11 of the New York State

Constitution as well pursuant to 28 U.S.C. §§ 2201 and 2202, New York Civil Procedure Law and

Rules ("CPLR") § 3001, CPLR §6301, New York Election Law, New York Unconsolidated Law §

4221, and Article 4 of the CPLR, to challenge, have declared invalid, and have annulled, the Town

of North Hempstead's recently adopted reapportioned district map (the "Map"). *See Map, attached*

*as Exhibit "A" hereto.*

     2.     The right to vote is preservative of all other rights.  Any diminution of the franchise,

by whatever method achieved, warrants careful scrutiny.

     3.     Both the U.S. and New York State Constitutions guarantee both formal and

substantial equality among voters.   The "one person, one vote" concept is venerated among our

democratic principles and is well enshrined in our jurisprudence.  The values it seeks to protect are

measured not only by requiring statistical equanimity among voting populations but must also take

into the account any direct or indirect impacts on the weight and effect of one person's vote relative

to that of another.

     4.     Here, among other statutory and constitutional violations, the approved plan and Map

has the effect of affording certain persons' votes greater weight and those of others a lesser weight

(and thus the indicia of a design to do just that)—both on a going forward basis and perhaps even

more egregiously in a retroactive manner as well.  This has been accomplished by the completely

unnecessary decision to switch district numbers to effectively extend the term of office one

representative while curtailing the term of another—all as a naked partisan power grab that seeks to

reverse the will of the people and reverse the effect of an election that already took place.

     5.     The redistricting engaged in by the Democratic-controlled Town of North Hempstead

constituted a complete railroading of the process in the favor of one side that prevented the

meaningful participation by Republicans or any other party. The Democratic majority on the Town

Board installed and appointed members to the "non-partisan" commission such the Democrats'

majority on the Town Board was duplicated by a Democratic majority on the Commission. With a 4-3 advantage on both the Board and Commission, the outcome of the process was effectively pre-determined and in service of a Democratic agenda. Republicans were excluded from the process at every instance and were denied the opportunity to meaningfully participate in this most important of democratic processes, a particularly unjust result given the will of the people as reflected in recent election results including the election of a Republican Town Supervisor in a general election.

6.      The Map passed by the Town Board created districts that: (a) are less compact than they should have been and less compact overall then they were previously; (b) needlessly split the Village of Mineola and other Census Designated Places; and (c) unlawfully swapped the district number designation for Districts 4 and 5, negatively impacting the length of Republican Councilman DAVID A. ADHAMI'S term, shortening his term of office and requiring him to run again as Councilman in 2024 should he wish to keep his seat -- for no valid redistricting purpose. More importantly, this manipulation served to retroactively invalidate the votes of innumerable Town residents that cast their votes with the understanding and expectation of the term of office of their chosen representative. The net result violates equal protection in the most glaring of fashions and flies in the face of state law barring such blatantly partisan gerrymandering.

7.      As such, annulment of the Map (and the Redistricting Plan it represents) is appropriate.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(3), because this action/proceeding seeks to "redress the deprivation, under color of State law, statute, ordinance, regulation" of rights, privileges, and immunities "secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction

3

of the United States….".  Id.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States.

9.      This Court has supplemental jurisdiction over, and the authority to hear, pendent state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has the authority to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     This Court has authority to award costs and attorneys' fees pursuant to 52 U.S.C. § 10310(e).

12.     This Court has personal jurisdiction over all parties, all of whom reside or are located n the Eastern District of New York.

13.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because all or substantially all of the events giving rise to the claims herein have occurred in the Eastern District of New York and because all of the Defendants reside or are located in the Eastern District of New York.

**PARTIES**

14.     Plaintiff PAUL A. PEREIRA, individually and as Mayor of the VILLAGE OF MINEOLA is a duly elected official of the Village of Mineola located in the Town of North Hempstead, County of Nassau, charged with administering the executive branch of Village of Mineola government, with offices located at 392 Mineola Boulevard, Mineola, New York 11501.

15.     Plaintiff the VILLAGE OF MINEOLA (the "Village") is a duly incorporated municipality and a political subdivision of the State of New York located in the Town of North Hempstead, County of Nassau.

4

16.     Plaintiff JAMES J. MCHUGH, JR., is a resident of the Town of North Hempstead, residing at 15 White Avenue, New Hyde Park, New York 11040, and is a registered voter in the Town of North Hempstead.

17.     Mr. McHugh resides in council District 5, which in the recently adopted redistricting Map challenged herein is now designated as District 4.

18.     Mr. McHugh served as an appointee to the Town of North Hempstead's redistricting commission created via Town Resolution 92-2022.

19.     Plaintiff COUNCILMAN DENNIS J. WALSH, is a resident and registered voter of the Town of North Hempstead as well as a duly-elected member of the Town Board of the Town of North Hempstead currently representing the 3rd District, residing at 138 Albertson Place, Mineola, New York 11501.

20.     Plaintiff COUNCILMAN DAVID A. ADHAMI is a resident and registered voter of the Town of North Hempstead as well as a duly-elected member of the Town Board of the Town of North Hempstead currently representing the 5th District, residing at 97 Ash Drive, Great Neck, New York 11021.

21.     Defendant TOWN OF NORTH HEMPSTEAD (the "Town") is a duly-incorporated municipal corporation and a political subdivision of the State of New York located in the County of Nassau, with offices locates at 220 Plandome Road, Manhasset, New York 11030.  The Town currently consist of six council districts.

22.     Defendant TOWN BOARD OF THE TOWN OF NORTH HEMPSTEAD (the "Town Board") is a duly elected legislative governmental body of the Town of North Hempstead, with offices at 220 Plandome Road, Manhasset, New York 11030.  The Town Board exercises general and specific legislative powers and is comprised of a six councilperson and the Town Supervisor.

23.     Defendant NASSAU COUNTY BOARD OF ELECTIONS (the "Board of Elections") is joined here as a necessary party. The Board of Elections is the Nassau County Agency charged with the implementation of elections pursuant to new or altered legislative districts in the County of Nassau.

## FACTS COMMON TO ALL CLAIMS

24.     Every ten years, the Town of North Hempstead participates in a councilmanic redistricting process based on the results of the U.S. Census Bureau's Decennial Census data.

25.     According to the 2020 federal census, which was released on August 12, 2021, the Town of North Hempstead's population grew by 11,317 people to 237,639.  This constitutes a 5% increase from the 2010 census which indicated the Town's population as 226,322.

26.     Chapter 15A of the Town Code of the Town of North Hempstead ("Town Code") directs the Town to revise the boundaries of the existing council districts where the federal census indicates the districts do not contain a substantially equal number of inhabitants.

27.     Specifically, Town Code §15A-1 entitled "Election districts" provides that:

Whenever a proposition shall have been adopted in the Town for the establishment of the ward system and the election thereafter of one Councilman from each ward, the Town Board shall divide the Town into four wards and fix the boundaries thereof, unless a proposition shall have been adopted to increase the number of councilmen from four to six, in which instance, the Town Board shall divide the Town into six wards and fix the boundaries thereof The division shall be made so that the number of inhabitants in each ward, based upon the last regular federal census, shall be substantially equal, with wards composed of convenient and contiguous territory in as compact form as practicable. No election district heretofore or hereinafter created under the Election Law shall contain parts of two or more wards. The Town Board shall make appropriate revisions of the boundaries of the wards so that they shall contain a substantially equal number of inhabitants not later than six months after the publication of the results of a regular federal census which indicates that the districts do not contain a substantially equal number of inhabitants; except that with regards to the 2020 federal census results, the time to make appropriate revisions of the boundaries of the wards so that they shall contain a substantially equal number of inhabitants shall be extended to 12 months after the publication of the results of the

2020 federal census. This extension of time to 12 months shall only apply to the results of the 2020 federal census. ***

When the Town Board shall have finally determined the boundaries of the wards, it shall cause a map of the Town to be prepared, showing, in detail, the location of each ward and the boundaries thereof. The original map so made shall be filed in the office of the Town Clerk, and copies thereof shall be filed in the offices of the County Clerk and the Board of Elections of Nassau County. The ward system shall be deemed established after such filing is complete. After a ward system shall have been so established, the term of office of every Town councilman shall terminate on the 31st day of December next succeeding the first biennial Town election held not less than 120 days after the establishment of such ward system, and, at such biennial Town election, one resident elector from each odd-numbered ward shall be elected as councilman therefrom for a term of two years, and one resident elector from each even-numbered ward shall be elected as councilman therefrom for a term of four years, each such term to begin on the first day of January next succeeding such election, and thereafter at each biennial Town election there shall be elected successors to the Town Councilmen whose terms are expiring for terms of four years each to begin on the first day of January next succeeding such election.

28.     The Town Code provisions focuses only on compactness and equalization of population numbers only.  However, local redistricting also requires other considerations beyond those set forth in the local law.

29.     Specifically, the United States Constitution, 14th Amendment, Section 1 provides that:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The New York State Constitution similarly guarantees equal protection to New York state citizens.

See N.Y. Const. Art. 1§ 11.

30.     In addition, the Town is subject to New York State Municipal Home Rule Law, which provides that a local municipality such as the Town "shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any

general law relating to its property, affairs or government." N.Y. Mun. Home Rule L. §10. As

concerns redistricting specifically, Municipal Home Rule Law provides that:

> In addition to powers granted in the constitution, the statute of local governments or in any other law, ***(ii) every local government, as provided in this chapter, shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: ***[including]
> (13) The apportionment of its legislative body and, only in connection with such action taken pursuant to this subparagraph, the composition and membership of such body, the terms of office of members thereof, the units of local government or other areas from which representatives are to be chosen and the voting powers of individual members of such legislative body. Except for the equal apportionment requirements in subclause (i.) of clause (a.) and clause (c.) of this subparagraph, which shall apply generally to any local government, the power granted by this subparagraph shall be in addition to and not in substitution for any other power and the provisions of this subparagraph shall apply only to local governments which adopt a plan of districting or redistricting thereunder.
>
> (a.) A plan of districting or redistricting adopted under this subparagraph shall comply with the following standards, which shall have priority in the order herein set forth, to the extent applicable:
>
> (i.) If such plan of districting or redistricting includes only single-member districts, such districts shall be as nearly equal in population as is practicable; the difference in population between the most and least populous district shall not exceed five percent of the mean population of all districts. If such plan of districting or redistricting includes multi-member districts, the plan shall provide substantially equal weight for the population of that local government in the allocation of representation in the local legislative body; and
>
> (ii.) Districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minority groups to participate in the political process or to diminish their ability to elect representatives of their choice; and
> (iii.) Districts shall consist of contiguous territory; and
>
> (iv.) Districts shall be as compact in form as practicable; and
>
> (v.) Districts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties. The maintenance of cores of existing districts, of pre-existing political

8

subdivisions including cities, villages, and towns, and of communities of interest shall also be considered. To the extent practicable, no villages or cities or towns except those having more than forty percent of a full ratio for each district shall be divided; and

(vi.) Districts shall be formed so as to promote the orderly and efficient administration of elections.

(b.) A plan of districting or redistricting adopted by a county under this subparagraph may provide that mayor of cities or villages, supervisors of towns or members of the legislative bodies of cities, towns, or villages, who reside in the county shall be eligible to be elected as members of the county legislative body.

(c.) As used in this subparagraph the term "population" shall mean residents, citizens, or registered voters. For such purposes, no person shall be deemed to have gained or lost a residence, or to have become a resident of a local government, as defined in subdivision eight of section two of this chapter, by reason of being subject to the jurisdiction of the department of corrections and community supervision and present in a state correctional facility pursuant to such jurisdiction. A population base for such a plan of apportionment shall utilize the latest statistical information obtainable from an official enumeration done at the same time for all the residents, citizens, or registered voters of the local government. Such a plan may allocate, by extrapolation or any other rational method, such latest statistical information to representation areas or units of local government, provided that any plan containing such an allocation shall have annexed thereto as an appendix, a detailed explanation of the allocation.

(d.) Where a public hearing on a local law proposed to be adopted under this subparagraph is required, by subdivision five of section twenty of this chapter, to be held only before an elective chief executive officer, the legislative body shall not adopt such proposed local law until after a public hearing shall have been held thereon before it, on notice as provided in such subdivision five, in which event no public hearing thereon before such chief executive officer shall be required.

(e) A local law proposed to be adopted under this subparagraph shall be subject to referendum only in the manner provided by paragraph j of subdivision two of section twenty-four of this chapter, except that such local law shall be subject to a mandatory referendum in any county in which a provision of law requires a mandatory referendum if a local law proposes a change in the form or composition of the elective governing body of the county. The local law may be so structured as to permit separate submission of the principle[] elements (such as, multiple office holding as in clause (b) above, the use of multiple member or floterial districts in portions of the local government, and so forth) of the plan and also may provide alternatives in the event one or more of these separate submissions is rejected by the electorate.

(f.) Notwithstanding any inconsistent provisions of any general or special law, or any local law, ordinance, resolution or city or county charter heretofore or hereafter adopted, no local government may restructure its local legislative body (pursuant to provision of this chapter or any other provision of law) more than once

in each decade commencing with the year nineteen hundred seventy; provided, however, that this prohibition shall not prevent the periodic adjustment of the weight of the votes of representatives on the basis of current census, voter, or other valid information where an existing plan distributes the votes of representatives on such a basis.

N.Y. Mun. Home Rule L. § 10(1)(a)(13)

31.     The present Town Board consists of six councilpersons, four of whom are Democrats, and the Town Supervisor, Jennifer DeSena, who ran on the Republican line and was the first Republican elected as Supervisor in the Town in thirty years.  As such, the Town Board is composed of four Democrats (the majority) and three Republicans (the minority).

32.     On January 20, 2022, the Town Board, by Resolution No. 22-2022, amended Chapter 15A of the Town Code to read that "the Town Board must revise each district's boundaries no later than twelve months after publication of the results of the 2020 federal census." This extended the Town Board's time to make appropriate redistricting changes for an additional six months, to August 12, 2022.

33.     The Town Board voted to create a so called "Nonpartisan" Temporary Redistricting Commission (the "Commission") on February 17, 2022.

34.     Pursuant to Town Board Resolution No. 92-2022, the Commission was tasked with "analyzing existing district maps as compared to the most recent census data and if necessary, developing and presenting a reconfigured map to the Town Board for approval."

35.     The provisions creating the Commission however were skewed so as to effectively prevent meaningful participation by the Republican caucus to the Commission.

36.     Pursuant to Town Board Resolution No. 92-2022(2), the seven members of the Commission were to be appointed as follows: "each voting member of the Town Board will nominate… one person for a total of seven members…".

37.     This appointment process was a departure from prior established procedure.   Prior redistricting commissions in the Town have provided that the Supervisor appoint three commissioners.

38.     It should be noted that this Commission has an odd number of commissioners.   Bi-partisan or non-partisan redistricting commissions often have an even number of voting commissioners so as to ensure that one party has no numerical voting advantage over the other party.

39.     Thus, although the Commission was touted as a "non-partisan" commission, as designed the majority of the Commission was appointed by Democratic Councilpersons (4 of the 7 members), rendering the Commission a de facto partisan Commission so as to effectively nullify and render nugatory any Republican input and participation. In addition, the Commission's chairperson – with the exclusive authority to call the public hearing and commission meetings—is appointed by the Town Board from among the Commission members.

40.     The Commission was tasked with conducting *at least* three public hearings throughout the Town and thereafter providing a final report to the Town Board no later than May 30, 2022.  Despite the Town having six (6) existing election districts, the Commission held only three, poorly advertised and noticed, hearings – the very minimum number required.

41.     Moreover, the Commission, despite having been created in February 2022, held these meetings in an unnecessarily condensed time period in May 2022 all within less than 10 days of each other despite having until August 2022 to complete the redistricting process.

42.     Indeed, the Commission actively denied requests made by the Town Supervisor to postpone the ultimate vote on the maps so as to allow additional public hearings and public input, despite their being ample time to do so in June and July before the August 2022 deadline.

43.     In addition, the Democratic controlled Town Board reserved for itself the authority to engage counsel to the Commission and all Commission consultants (including the map drawer). The Republican Caucus to the Commission had no input in the selection process and were denied a budget to retain consultants, counsel and other professionals to assist in evaluating and seeking changes to the maps generated by the Democratic Commission, and were denied access to vital information and the Town Attorney.

44.     As a result of this partisan composition of the Commission, all of the map options considered by the Commission were created without any input from the Republican-appointed Commissioners. Their only role on the Commission was to cast an intentionally neutered vote on maps options presented to them as a finished product.

45.     The Commission was to prepare a written final report to be submitted to the Town Board with its recommended reconfiguration of the council district lines. This report however needed to be approved only by four voting members of the Commission, again excluding meaningful participation by the Republican Caucus to the Commission in the preparation and submission of the final report.

46.     On or about May 30, 2022, the Commission issued its final Report. *See Exhibit "B", final report "memo" annexed hereto and incorporated herein.*

47.     On June 16, 2022, the proposed Map Option One presented in the final Report was adopted by the Town Board, which voted as expected, along party lines to adopt it. *See Exhibit D.*

48.     Review of the adopted Map in the Town Board approved Redistricting Plan (*see Exhibit A*) in comparison with the prior map (*see Exhibit C*) shows that, with the pretext of creating a minority-majority "Asian" district, the basis for which is not supported by any data or public

12

comment, the district lines were redrawn to ensure advantage for the Democratic party and its incumbents and to disadvantage the Republican party and its incumbents.

49.     The new Districts are drawn to discourage competition and for the purpose of favoring Democratic incumbents and disfavoring Republican incumbents or other particular candidates or political parties.

50.     The Town Board approved Redistricting Plan (as evidenced by the approved Map) has the effect of negatively impacting Republican candidates and votes, while enhancing Democratic candidates and evinces an intent to achieve such political objectives.

51.     The new lines result in the current Republican incumbents in District 2 and District 3 relegated to residing at the edge of their respective Districts.

52.     The new lines result in the current Republican incumbent in District 3 and District relegated to residing at the edge of their respective Districts.  Districts 1 and 2 are both democrats.

53.     The new lines unnecessarily and unlawfully split the Village of Mineola and other Census Designated Places.

54.     The new lines in the Plan unlawfully ignore the cores of existing districts.

55.     The Village of East Willison for example was unnecessarily moved from District 2 (where it is represented by Democratic Town Councilman Zuckerman) to District 3 (to not be represented by Republican Councilperson Dennis Wash).

56.     The new lines unnecessarily and unlawfully ignore communities of interest.

57.     The new Map unnecessarily (and for no valid redistricting purpose) switches the numerical designation of Districts 4 and 5 simply to undercut incumbent Councilman Adhami, artificially shortening the length of the term of office to which he was elected by his constituency,

13

without prior notice to said constituency that they would be voting for a curtailed term -- thereby effectively interfering with the orderly and efficient administration of elections.

58.     Employing a euphemism to conceal the drastic maneuver, the Commission's report nevertheless admits that "District four has the base of the previous district five."  What the Commission calls a "base" means people, voters, who cast ballots for and duly elected their chosen representative—which exercise of the franchise is now being retroactively clawed back by partisan gamesmanship.

59.     The proposed District 4 contains 70% of the core of the existing District 5.  Proposed District 5 has 75% of the core of existing District 4.  As such the switch in their numerical designation only serves to extend Democratic Councilwoman Lurvey's term to six years -- grossly beyond what the Town Code allows and what the Town voters voted for.

60.     Specifically, pursuant to Town Code, the six Town councilpersons on the Town Board serve staggered terms and are each elected for four years.  Councilperson Troiano's was elected in existing District 1 in 2022 to serve through 2026; Councilperson Zuckerman was elected in existing District 2 in 2020 to serve through 2024; Councilperson Walsh was elected in existing District 3 in 2022 to serve through 2026; Councilperson Lurvey was elected in existing District 4 in 2020 to serve through 2024; Councilperson Adhami was elected in existing District 5 in 2022 to serve through 2026 and Councilperson Dalimonte was elected in existing District 6 in 2020 to serve through 2024.  The new Map's switch of District 4 for District 5 results in Republican Councilperson Adhami's four year term being shortened to a two year term (he will now hold office only through 2024 representing District 4 and not through 2026 representing District 5) and Democratic Councilperson Lurvey's term being extended (she will now hold office through to 2026 in District 5, despite begin elected to serve District 4 through 2024).

14

61.     New York Municipal Home Rule Law § 23 provides, in pertinent part, that a local law "shall be subject to mandatory referendum if it: "[a]bolishes an elective office, or changes the method of nominating, electing or removing an elective officer, or changes the term of an elective office, or reduces the salary of an elective officer during his term of office" or if it "[a]Abolishes, transfers or curtails any power of an elective officer." N.Y. Mun. Home Rule L. §23(e) & (f). Here, the unnecessary swap of the numerical district designation among and between District 4 and District 5 violates Municipal Home Rule Law in that it clearly transfers and curtails the power of Councilperson Adhami and changes the term of both Councilpersons Adhami and Lurvey, without the express agreement of the voting public as would have been evidence via a referendum.

62.     Section 7-108 of the New York State Election Law provides that if two or more candidates are running for the same office, for different terms, the term for which each is nominated shall be printed as part of the title of the office on the ballot.  This is reflective if the important principle that voters understand not only whom they are voting for but to duration of their term.

63.     Here, Town voters in November 2021 cast their vote and chose their elected representative with an understanding that that representative would serve their interests for four years.  The Town Board Approved Redistricting Plan reaches back and retroactively cancels or otherwise diminishes the effect of these votes, and the will of the people represented thereby by changing the term.

64.     In some instances, the Plan pairs two representatives into the same District while leaving other Districts open without a representative.  This was unnecessary as the populations of the existing districts did not require much change at all.

65.     In some instances, the Plan pairs two representatives into the same District while leaving other Districts open without a representative.  This was unnecessary as the populations of the existing districts did not require much change at all.

66.     Furthermore, and by way of example, populations were shifted out of existing District 5 (rather than into District 5) simply to exclude the incumbent's residence from that District when, in fact, existing District 5 was slightly underpopulated and should have received additional population.

67.     Compactness is especially affected as concerns District 2 and District 3 where snakelike incursions are made unnecessarily into District 2 from District 3 unlawfully splitting the Village of Mineola.  The southern boundary of District 2 stops just short of the census block of an incumbent Board member's home.  Splitting the Village of Mineola was unnecessary in the first instance, and the drawing of a line immediately adjacent to an incumbent's residence is highly suspect and without justification.

68.     In addition, in furtherance of achieving the improper goal of partisan gerrymandering, the new lines are not drawn to maximize compactness as overall compactness is less in the new Map.  The new Plan is less compact using all statistical measures.   Indeed, the new lines render five of the six new District less compact than they were before and the mean compactness of the Districts overall in the new Map is less than in the prior, previously existing District map.

## AS AND FOR A FIRST COUNT
### (Federal - Violation of Equal Protection)

69.     Plaintiff-Petitioners repeat and reallege the allegations of paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.     The Town Board Approved Redistricting Plan (the "Plan") is unconstitutional in so far as it violates the provisions of the 14th Amendment and denies residents of the Town equal protection under the law and violates the one-person-one vote principle.

71.     The Plan arbitrarily and impermissibly reassigned district numbers with the purpose and effect of disenfranchising thousands of voters whose votes and ability to elect representatives of their choice have been materially diminished.

72.     As a result of the unconstitutional Town Board approved Plan, the weight, power and effect of certain voters in the Town have been greatly diminished while the weight power and effect of other voters in the Town have been greatly enhanced.

73.     The unequal impact of the Plan applies not only to future elections but to elections that have already taken place as well.  A voter who voted for a councilperson in November of 2021 and successfully elected a representative of his or her choice to serve a four-year term is now having the weight of that successful vote eviscerated, as a result of a wholly baseless swap of district numbers in Plan.

74.     Furthermore, certain voters will have the power to vote twice in two years, while others may only be permitted to vote once in six years for the same elective office on the Town Board.  This is not a quirk of the Town's staggered election cycle but rather a blatant and egregious, intentional manipulation of that voting cycle, wholly unrelated to advancing any principal of redistricting.

75.     The same Town Board that precipitously approved the Plan at all times possessed the power to amend the Town Code as necessary to avoid the unconstitutional impact of the Plan.

76.     Plaintiff McHugh and others negatively impacted in the manner described above are being treated differently than others similarly situated in so far as the drastic difference in the weight given to their respective voting power.

77.     There is no rational basis for this differential treatment.

78.     The Town Board's approval of the Plan implies a perceived legality and constitutionality of said Plan notwithstanding the fact that the Plan effects a deprivation or diminution of voting power violative of Equal Protection.

79.     Plaintiffs-Petitioners, and the citizens of the Town, will thus suffer irreparable injury and are entitled to a judicial declaration: (a) declaring the Redistricting Plan at issue invalid, unconstitutional, and null and void; (b) enjoining the implementation of the Redistricting Plan and (c) requiring the creation of a constitutionally permissible redistricting plan for the Town.

## AS AND FOR A SECOND COUNT
### (Declaratory Judgment – Federal)

80.     Plaintiff-Petitioners repeat and reallege the allegations of paragraphs 1 through 79 of the Complaint as if fully set forth herein.

81.     This claim is asserted pursuant to 28 U.S.C. § 2201 for declaratory judgment for purposes of determining a question of actual controversy between the parties.

82.     A substantial justiciable controversy exists as to the lawfulness of the Town Board's approved Redistricting.

83.     As set forth above, the Town Board's approval Plan implies a perceived legality and constitutionality of said Plan notwithstanding the fact that the Plan effects a deprivation or diminution of voting power violative of Equal Protection.

84.     Plaintiffs-Petitioners are irreparable injured and have no adequate remedy at law.

85.     Plaintiffs-Petitioners, and the citizens of the Town, will thus suffer irreparable injury and are entitled to a judicial declaration: (a) declaring the Redistricting Plan at issue invalid, unconstitutional, and null and void; (b) enjoining the implementation of the Redistricting Plan and (c) requiring the creation of a constitutionally permissible redistricting plan for the Town.

### AS AND FOR A THIRD COUNT
### (Violation of N.Y. Municipal Home Rule Law §§ 10 and 34)

86.     Plaintiffs-Petitioners repeat and reallege the allegations of paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87.     The Town Board Approved Redistricting Plan violates relevant and material provisions of the Municipal Home Rule Law in addition to violating federal principles of equal protection and the principle of one-person-one vote.

88.     The Redistricting Plan has been drawn to discourage competition and for the purpose of favoring certain incumbents and political parties while disfavoring other incumbent, candidates and rival parties.

89.     The Plan creates districts that are not as compact as they could and should be.

90.     The Plan fails to maintain cores of existing districts, fails to maintain preexisting political subdivisions and fails to maintain communities of interest.

91.     The Plan divided the Village of Mineola and other Census Designated Places without justification.

92.     The Plan purports to create a minority-majority Asian district by consciously ignoring the diversity of the political, social-economic, religious, cultural, and language/linguistic differences that exist within the single, monolithic heading the plan assigns to what in reality are many actual

separate and distinct communities of interest.  This has been done as a pretext to justify violations of other redistricting principles and to make changes on the Plan to further impermissible partisan goals.

93.     The Plan fails to promote, and actively works and injury on, the orderly and efficient administration of elections by, *inter alia*, arbitrarily reassigning district numbers.

94.     Each of the foregoing represent a violation of Sections 10 and 34 of the New York Municipal Home Rule Law.  Taken together, they represent a dramatic violation of said laws and a knowing flouting of the recent, state-wide legislative movement, responsive to voter outrage, specifically implements precisely cure this form of blatant, partisan gerrymandering.

95.     As such, the Plan is unlawful, invalid, unconstitutional, and should be declared null and void.

### AS AND FOR A FOURTH COUNT
### (Violation of N.Y. Municipal Home Rule Law § 23)

96.     Plaintiffs-Petitioner repeat and reallege the allegations of paragraphs 1 through 95 of the Complaint as if fully set forth herein.

97.     The Town Board Approved Redistricting Plan runs afoul of Municipal Home Rule Law § 23 in so far as it abolishes, transfers and/or curtails the powers of an elected officer such here Councilman Adhami.

98.     The Plan further violates the Municipal Home Rule Law and the Election law in so far as it changes the term of an elected office and does so without proper notice to the voter.

99.     It is no justification that these violations were effectuated through a redistricting plan since the determination to reassign district numbers was wholly arbitrary and without any valid or legitimate redistricting purpose.

100.   Cognizant of essential Democratic principles, the New York State Legislature expressly contemplated that such significant changes to the right to vote should only be effectuated through public referenda not a slight of hand maneuver buried in a redistricting plan.

101.   As such, the Plan is unlawful, invalid, unconstitutional, and should be declared null and void.

## AS AND FOR A FIFTH COUNT
### (Declaratory Judgment - CPLR 3001)

102.   Plaintiffs-Petitioner repeat and reallege the allegations of paragraphs 1 through 101 of the Complaint as if fully set forth herein.

103.   The Town Board's approved Redistricting Plan is unconstitutional in so far as it violates the provisions of the New York State Constitution by denying residents of the Town equal protection under the law and violates the one-person-one-vote principle.

104.   A case in controversy exists presenting a judiciable controversy for the Court given that, the Town Board's approval of the Redistricting Plan implies a perceived legality and constitutionality of said Plan, notwithstanding the fact that the Plan effects a deprivation or diminution of voting power violative of Equal Protection.

105.   Plaintiffs-Petitioners and those similarly situated are irreparable injured and have not adequate remedy at law.

106.   Plaintiffs-Petitioners, and the citizens of the Town, will thus suffer irreparable injury and are entitled to a judicial declaration: (a) declaring the Redistricting Plan at issue invalid, unconstitutional, and null and void; (b) enjoining the implementation of the Redistricting Plan and (c) requiring the creation of a constitutionally permissible redistricting plan for the Town.


**WHEREFORE**, Plaintiffs-Petitioners demand judgment:

(1)     Declaring that the Town Board Approved Redistricting Plan is unconstitutional, unlawful and null and void;

(2)     Enjoining the Defendants from implementing or enforcing said Redistricting Plan; and

(3)     Awarding Plaintiffs-Petitioners costs, disbursements, and attorney's fees of this action; and

(4)     Granting Plaintiffs-Petitioners such other and further relief and declaration of rights of the parties as the Court deems just and proper.

Dated: Sayville, New York
          October 14, 2022

MESSINA PERILLO HILL LLP

By: _____
          Vincent J. Messina, Jr.
          Lisa A. Perillo
          Timothy Hill
285 West Main Street, Suite 203
Sayville, New York 11782
(631) 582-9422
*Attorneys for Plaintiffs-Petitioners*

22

EXHIBIT A



Council Plan
North Hempstead Opt 1



AutoBound Edge MAP - Based on: 2020 Census Geography, 2020 PL94-171

Includes Population Adjusted for Incarcerated Individuals by the State of New York Task Force on Demographic Research and Reapportionment

# EXHIBIT B

# Memorandum

**To:**       **Town Board of the Town of North Hempstead**

**From:**    **Nonpartisan Temporary Redistricting Commission**

**Date:**    **May 30, 2022**

**Re:**      **Report Recommending Amendments to the Existing Ward District Map, Pursuant to 2020 Census Data and Town Code § 15A-1.**

### Background

#### *Relevant Laws and Legislative Mandate*

Pursuant to Federal and State law and the Town Code, the Town of North Hempstead participate in a council**manic** redistricting process based on the results of the U.S. Census Bureau's Decennial Census data. Chapter 15A of the Town Code directs the Town to revise the boundaries of the existing council districts where the federal census indicates the districts do not contain a substantially equal number of inhabitants. It further requires that each district be "substantially equal with wards composed of convenient and contiguous territory in as compact form as practicable".

Chapter 15A further states "The Town Board shall make appropriate revisions of the boundaries of the wards so that they shall contain a substantially equal number of inhabitants not later than six months after the publication of the results of a regular federal census which indicates that the districts do not contain a substantially equal number of inhabitants."

On January 20, 2022, the Town Board passed Resolution No. 22-2022 to amend section 15A of the Town Code to extend the time allowed to make district boundary revisions by six months. This amendment allows the Town until August 12, 2022, to make the necessary and appropriate changes.

On October 27 ,2021 Governor Kathy Hochul signed into law an amendment to "Chapter 36A Municipal Home Rule – Article 4 Powers of Counties and Cities to Adopt Charters – Part 1 The County Charter Law – Section 34 Limitations and restrictions." This legislation reduced the allowable population deviation between districts or wards from a total deviation of ten percent to a total deviation of five percent. This means the difference between the largest and smallest district's population should be no more than five percent. A copy of the law has been attached as "Exhibit A".

The Town Board by Resolution no. 92-2022, duly adopted, at a meeting held of February 17, 2022, established the Non-partisan Temporary Redistricting Commission (the "Commission). A copy of the resolution is annexed hereto and made a part hereof as "Exhibit B". The Commission was charged with

analyzing the results of the 2020 Federal Census, the existing ward district map and, if necessary, making recommendations to amend the ward district map by developing and presenting amended ward district maps to the Town Board.  These proposed maps were to be consistent with the 2020 Federal Census data.

Pursuant to Resolution No. 92 of 2022, the Commission held three public hearings. The public hearings were held on May 9, 2022 at Town Hall, 220 Plandome Road, Manhasset NY 11030, on May 12, 2022 at Clinton G. Martin Park, 1601 Marcus Avenue, New Hyde Park, NY 11042, and on May 17, 2022 at the "Yes We Can" Community center, 141 Garden Street, New Cassel, NY 11590.

Additionally, the resolution requested that "No later than May 30, 2022, the Chair of the Commission shall submit a written report to the Town Board with any recommendations on the reconfiguration of council district lines."

### *2020 Federal Census Data*

The 2020 federal census data demonstrates that the six existing council ward districts do not contain substantially equal numbers of inhabitants.  A copy of the census data compiled by the Town's professional consultant, CityGate GIS, is annexed hereto and made a part hereof as "Exhibit C".  The results of the 2020 census show the Town's total adjusted population to be 237,758.  The ideal population for each district, or ward, is therefore 39,626 (*i.e.* 237,758 divided by six).  A total deviation of 5.55 percent exists among the districts, with four districts, District one, District two, District three and District six, each having a deviation greater than 2.5-percent (*i.e.* a -4.4-percent deviation in District One, -4.1-percent deviation in District Two, +3.3-percent deviation in District Three and a +4.7-percent deviation of in District Six).  As a result, the existing district boundary lines must be altered to correct the deviation, and to balance each district population so that all six districts are substantially equal.

| District | 2010 Federal Census Population | 2020 Federal Census Population | Percent Increase |
|---|---|---|---|
| District 1 | 36,739 | 37,895 | 3.147% |
| District 2 | 37,067 | 38,000 | 2.517% |
| District 3 | 38,015 | 40,924 | 7.652% |
| District 4 | 37,368 | 40,174 | 7.509% |
| District 5 | 37,273 | 39,288 | 5.406% |
| District 6 | 39,860 | 41,477 | 4.057% |
| **Total** | 226,322 | 237,758 | 5.053% |

### *Relevant Redistricting Principles*

Based on Federal, State, local laws, case law, practical methods employed nationwide, and/or prior public comment, the Commission adhered to the following ranked standard redistricting principles in considering potential revisions to the existing district boundaries:

1. Population equality – the overall population deviation (or difference) from the size of the largest to smallest districts cannot exceed 5% overall.
2. Districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or minority groups to participate in the political process or to diminish their ability to elect representatives of their choice. This includes Black, Asian American, Hispanic, Native Americans, and Pacific islanders. When high levels of racially polarized voting is evident, an effective minority district may need to be created.
3. Districts shall consist of contiguous territory, requiring that all parts of the district be connected.
4. Districts shall be in as compact form as is practicable, meaning that if a compact district can be drawn, it must be drawn.
5. Districts cannot be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or political party candidates.
6. Districts should also consider cores of existing districts, pre-existing political subdivisions (villages), and "communities of interest. (COIs)." COIs are not defined by law, but are generally communities where residents share like-minded socio-economic, racial, ethnic, educational, business, medical or other self-described similarities.
7. Villages that comprise less than 40% of a single district's population should not be divided.

### Public Outreach and Comment

As part of the Commission's outreach, the Town created a Redistricting Commission webpage on the Town of North Hempstead's website at www.northhempsteadny.gov/redistricting for residents to visit, submit online comments on the current map, view proposed plans, once submitted by the Commission, and learn more about the redistricting process.

The Commission held public hearings on May 9, 2022, May 12, 2022 and May 17, 2022, where the public was invited to comment and provided an unrestricted opportunity to make written or online comments on the redistricting process and the current maps.

In addition, the Town issued a press release to all local papers, Newsday, and the local television news outlets and websites, advising of the dates of public meetings and the website where residents could submit public comments online. The Town also published legal notices of all the public hearings meetings in the local newspapers and Newsday and advertised the meetings on social media networks such as Facebook.

### Relevant Information Pertaining to Existing Council Districts

Six council districts currently exist. The following general notes apply to the current districts.

*District 1*

District No. 1 is a Westbury/New Cassel-based minority influenced seat created pursuant to testimony taken at the districting subcommittee hearing held in 2003 and 2012.  Voting age minority population is

3

21.4-percent Black, 36.8-percent Latino, and 8.4-percent Asian-American. This district also includes Old Westbury and Carle Place. The villages and unincorporated areas contained herein are the most compact method of creating a district with a substantial minority voting age population.

*District 2*
District No. 2 is an East Hills, Roslyn Heights, Albertson, East Williston-centered district, located in the central part of the Town. It unites the unincorporated areas of Manhasset Hills, Herricks, Roslyn Heights and Searingtown in one district.

*District 3*
District No. 3 is a southern township border district. The district joins similar socio-economic communities in Mineola, Williston Park and New Hyde Park, and includes most of the Mineola School District and all of the New Hyde Park-Garden City Park School District (No. 5), a component of the Sewanhaka Central High School District. This district is relatively compact.

*District 4*
District No. 4 is a Northern Boulevard-based district that includes a majority of North Great Neck, all of unincorporated Manhasset, and parts of Roslyn. This district is one of four that include parts of Northern Boulevard, and its associated transportation issues (Northern Boulevard being one of the acknowledged business centers of the Town). The Village of North Hills and parts of Roslyn (the villages of Roslyn and Roslyn Estates) were both added to the district in 2003 to achieve population equality. The inclusion of unincorporated Manhasset in this district helps distribute the power of unincorporated areas among the districts, as that portion of Great Neck contained within this district consists mostly of incorporated villages.

*District 5*
District No. 5 is a western township border district that includes a majority of the North Hempstead-Queens border. The district runs from Saddle Rock, Harbor Hills and Great Neck Estates in the north to North New Hyde Park and Floral Park in the south. Most of the southern part of the Great Neck School District (*i.e.*, Great Neck South High School and Middle School) is in this district. The Great Neck population, inclusive of Lake Success, is too large to incorporate into one district. As a result, the creation of a western border district allows Great Neck to partially influence the election of two members.

*District 6*
District No. 6 is a Port Washington-based district where the southern border is determined by village or water boundaries. This district includes most of the Port Washington peninsula, and the entire Port Washington School district.

## Proposed Revisions to the Existing District Map

The Committee considered multiple proposals to revise the boundaries of the existing six council district wards to comply with the 2020 census results. Each of the redistricting plan options comply with

as many redistricting principles as possible, with adherence to the equal population requirement.  A population summary and a description of the changes are included for each option below:

**Option 1**
Total Population: 237,758
Ideal Population: 39,626
Largest Population: 39,898 – District 5
Smallest Population: 39,334 – District 3
Total Deviation between largest and smallest: 564 – 1.43%
Minority Majority Districts: 2 – District 1 & District 4

Option one incorporates the public comments received in-person and online.

District one does not lose any parts. It adds a small portion of Roslyn Heights in order to meet the population deviation. District one is a minority majority district.

District two loses the Village of East Williston, the un-incorporated areas of Manhasset Hill, parts of un-incorporated areas of Roslyn Heights, and the un-incorporated areas of Herricks. It gains the Village of North Hills and parts of the Village of Mineola.

District three loses parts of the Village of Mineola and parts of the un-incorporated areas of Garden City Park. It gains the Village of East Williston, the parts of the Village of Floral Park which are in the Town of North Hempstead, and parts of North New Hyde Park.

District four has the base of the previous district five. District four loses the Villages of Saddle Rock, Great Neck Estates, the parts of the Village of Floral Park which are in the Town of North Hempstead, parts of un-incorporated areas of North New Hyde Park, the unincorporated areas of Saddle Rock Estates, and Harbor Hills. It gains the unincorporated areas of Manhasset Hills, Herricks, and Garden City Park. The addition of these areas makes district four a minority majority district.

District five has the base of the previous district four. District five loses the Villages of North Hills, Roslyn, and Roslyn Estates. It gains the Villages of Munsey Park, Plandome Manor, Plandome, Plandome Heights, Saddle Rock, Great Neck Estates, the unincorporated areas of Saddle Rock Estates and Harbor Hills.

District six loses the Villages of Plandome Manor, Plandome, Plandome Heights, and Munsey Park. It gains the Villages of Roslyn and Roslyn Estates.

These changes are made to follow public comments submitted in-person and online. They create a new Asian minority majority council district (district 4), incorporate the Herricks school district in two council districts instead of four, and separate Great Neck North and Great Neck South school zones. They also place the communities of interest in the Manhasset area in the same council district.

The following of Village borders has created multiple districts which have unsmooth edges. The Village of the Mineola, whose population is over 40% of an ideal council district population, is the only Village which is separated between two districts.

**Option 2**
Total Population: 237,758
Ideal Population: 39,626
Largest Population: 40,088 – District 3
Smallest Population: 39,186 – District 1
Total Deviation between largest and smallest: 902 – 2.28%
Minority Majority Districts: 2 – District 1 & District 4

Option two incorporates the public comments received in-person and online.

District one does not lose any parts. It adds a small portion of the Village of Mineola in order to meet the population deviation. District one is a minority majority district.

District two loses the Village of East Williston, the un-incorporated areas of Manhasset Hill, and parts the un-incorporated areas of Herricks. It gains parts of the Village of Mineola.

District three loses parts of the Village of Mineola and parts of the un-incorporated areas of Garden City Park. It gains the Village of East Williston, the parts of Village of Floral Park which are in the Town of North Hempstead, and parts of North New Hyde Park.

District four has the base of the previous district five. District four loses the Villages of Saddle Rock, Great Neck Estates, the parts of the Village of Floral Park which are in the Town of North Hempstead, parts of un-incorporated areas of North New Hyde Park, the unincorporated areas of Saddle Rock Estates, and Harbor Hills. It gains the Village of North Hill, the unincorporated areas of Manhasset Hills, part of the unincorporated areas of Herricks, and Garden City Park. The addition of these areas makes district four a minority majority district.

District five has the base of the previous district four. District five loses the Villages of North Hills, Roslyn, and Roslyn Estates. It gains the Villages of Munsey Park, Plandome Manor, Plandome, Plandome Heights, Saddle Rock, Great Neck Estates, the unincorporated areas of Saddle Rock Estates and Harbor Hills.

District six loses the Villages of Plandome Manor, Plandome, Plandome Heights, and Munsey Park. It gains the Villages of Roslyn and Roslyn Estates.

These changes are made to follow public comments submitted in-person and online. They create a new Asian minority majority council district (district 4), incorporate the Herricks school district in two council districts instead of four, and separate Great Neck North and Great Neck South school zones. They also place the communities of interest in the Manhasset area in the same council district.

The following of Village borders has created multiple districts which have unsmooth edges. The Village of the Mineola, whose population is over 40% of an ideal council district population, is the only Village which is separated between three districts.

**Option 3**
Total Population: 237,758
Ideal Population: 39,626
Largest Population: 40,603 – District 4
Smallest Population: 38,668 – District 6
Total Deviation between largest and smallest: 1,935 – 4.88%
Minority Majority Districts: 1 – District 1

Option three makes minor changes to the current ward districts but does not incorporate the public comments received in-person and online. It does incorporate Commission member comments.

District one does not lose any parts. It adds a small portion of the Village of Mineola in order to meet the population deviation. District one is a minority majority district.

District two loses a part of the un-incorporated area of Garden City Park. It gains the Village of Roslyn.

District three loses a small part of the Village of Mineola. It does not gain any areas.

District four has the base of the previous district five. District four does not lose any areas. It gains a small portion of the unincorporated area of Garden City Park.

District five has the base of the previous district four. District five loses the Village of Roslyn. It gains the Village of Munsey Park.

District six loses the Village of Munsey Park. It does not gain any area.

These changes are made to follow least change principles. Unfortunately, this option does not allow for the incorporation of the public comments submitted in-person and online. There is no Asian minority majority council district, the Herricks School district is split into four council districts, and Great Neck North and Great Neck South school zones are not separated.

The following of Village borders has created multiple districts which have unsmooth edges. The Village of the Mineola, whose population is over 40% of an ideal council district population, is the only Village which is separated between two districts.

**Option 9**
Total Population: 237,758
Ideal Population: 39,626
Largest Population: 40,450 – District 4

7

Smallest Population: 38,668 – District 6
Total Deviation between largest and smallest: 1,782 – 4.5%
Minority Majority Districts: 1 – District 1

Option nine makes multiple changes to the current ward districts but does not incorporate all of the public comments received in-person and online.

District one does not lose any parts. It adds a small portion of the unincorporated area of Roslyn Heights in order to meet the population deviation. District one is a minority majority district.

District two loses parts of the un-incorporated areas of Garden City Park, Manhasset Hills, and Herricks. It gains the Village of Williston Park and Village of Roslyn.

District three loses the Village of Williston Park. It gains part of the unincorporated areas of Garden City Park, North New Hyde Park, and the parts of the Village of Floral Park which are in the Town of North Hempstead.

District four has the base of the previous district five. District four loses the Villages of Saddle Rock, Great Neck Estates, the parts of the Village of Floral Park which are in the Town of North Hempstead, parts of un-incorporated areas of North New Hyde Park, the unincorporated areas of Saddle Rock Estates, and Harbor Hills. It gains the Village of North Hills, the unincorporated areas of Manhasset Hills, and Herricks.

District five has the base of the previous district four. District five loses the Villages of North Hills and Roslyn. It gains the Villages of Munsey Park, Saddle Rock, Great Neck Estates, the unincorporated areas of Saddle Rock Estates and Harbor Hills.

District six loses the Village of Munsey Park. It does not gain any area.

This option incorporates some of the public comments submitted in-person and online. There is no Asian minority majority council district, the Herricks School district is split into three council districts. The Great Neck North and Great Neck South school zones are separated.

8

**Exhibits**

A.  New York Senate Bill 5160B/A229-C
B.  North Hempstead Town Board Resolutions 92 of 2022
C.  2020 Federal Census Data of the current Council Districts
D.  Demographic Breakdown of current districts and recommended options
E.  Color Images of the proposed maps

# Exhibit A

Legislative Information - LBDC

**A229-C**  Paulin  Same as S 5160-B  SKOUFIS
Municipal Home Rule Law
TITLE....Provides no county shall supersede any state law which relates to the division of any county into districts for the purpose of apportionment
**This bill is not active in the current session.**

| | |
|---|---|
| 01/06/21 | referred to local governments |
| 02/03/21 | amend and recommit to local governments |
| 02/03/21 | print number 229a |
| 05/21/21 | amend and recommit to local governments |
| 05/21/21 | print number 229b |
| 05/25/21 | reported referred to rules |
| 05/26/21 | amend and recommit to rules 229c |
| 06/02/21 | reported |
| 06/02/21 | rules report cal.281 |
| 06/02/21 | ordered to third reading rules cal.281 |
| 06/08/21 | passed assembly |
| 06/08/21 | delivered to senate |
| 06/08/21 | REFERRED TO RULES |
| 06/09/21 | SUBSTITUTED FOR S5160B |
| 06/09/21 | 3RD READING CAL.1448 |
| 06/09/21 | PASSED SENATE |
| 06/09/21 | RETURNED TO ASSEMBLY |
| 10/22/21 | delivered to governor |
| 10/27/21 | signed chap.516 |

# STATE OF NEW YORK

_____

229--C

2021-2022 Regular Sessions

# IN ASSEMBLY

*(Prefiled)*

January 6, 2021

_____

Introduced by M. of A. PAULIN, HUNTER, JACOBSON -- read once and referred to the Committee on Local Governments -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee -- again reported from said committee with amendments, ordered reprinted as amended and recommitted to said committee -- reported and referred to the Committee on Rules -- Rules Committee discharged, bill amended, ordered reprinted as amended and recommitted to the Committee on Rules

AN ACT to amend the municipal home rule law, in relation to the division of a county into districts for the apportionment of members of its local legislative body

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

1    Section 1.  Subdivision 4 of section 34 of the municipal home rule law
2  is renumbered subdivision 5 and a new subdivision 4 is added to read  as
3  follows:
4    *4. Notwithstanding  any  local  law  to  the  contrary,  any  plan of*
5  *districting or redistricting adopted pursuant to  a  county  charter  or*
6  *charter  law  relating  to  the  division of any county, except a county*
7  *wholly contained in a city, into districts for the  purpose  of  the*
8  *apportionment  or  reapportionment  of  members of its local legislative*
9  *body shall be subject to federal and state  constitutional  requirements*
10  *and shall comply with the following standards, which shall have priority*
11  *in the order herein set forth, to the extent applicable:*
12    *a.  If such plan of districting or redistricting includes only single-*
13  *member districts, such districts shall be as nearly equal in  population*
14  *as  is  practicable;  the  difference in population between the most and*
15  *least populous district shall not exceed five percent of the mean  popu-*
16  *lation  of  all  districts. If such plan of districting or redistricting*
17  *includes multi-member districts, the plan  shall  provide  substantially*

EXPLANATION--Matter in *italics* (underscored) is new; matter in brackets
[-] is old law to be omitted.

LBD01955-13-1

Legislative Information - LBDC

A. 229--C                          2

1   equal weight for the population of that county in the allocation of
2   representation in the legislative body of that county; and
3      b. Districts shall not be drawn with the intent or result of denying
4   or abridging the equal opportunity of racial or language minority groups
5   to participate in the political process or to diminish their ability to
6   elect representatives of their choice; and
7      c. Districts shall consist of contiguous territory; and
8      d. Districts shall be as compact in form as practicable; and
9      e. Districts shall not be drawn to discourage competition or for the
10  purpose of favoring or disfavoring incumbents or other particular candi-
11  dates or political parties. The maintenance of cores of existing
12  districts, of pre-existing political subdivisions including cities,
13  villages, and towns, and of communities of interest shall also be
14  considered. To the extent practicable, no villages, cities or towns
15  except those having more than forty percent of a full ratio for each
16  district shall be divided; and
17     f. Districts shall be formed so as to promote the orderly and effi-
18  cient administration of elections.
19     § 2. The opening paragraph and clauses (a.) and (b.) of  subparagraph
20  13  of  paragraph a of subdivision 1 of section 10 of the municipal home
21  rule law, the opening paragraph and subclause (i.) of clause  (a.)   as
22  amended  by  section  3  of  part  XX of chapter 57 of the laws of 2010,
23  clauses (a.) and (b.)  as added by chapter 834 of the laws of 1969,  are
24  amended to read as follows:
25     The apportionment of its legislative body and, only in connection with
26  such  action  taken  pursuant  to this subparagraph, the composition and
27  membership of such body, the terms of office  of  members  thereof,  the
28  units  of  local government or other areas from which representatives are
29  to be chosen and the voting powers of individual members of such  legis-
30  lative  body.  Except  for  the  equal  apportionment  requirements  in
31  subclause (i.) of clause (a.) and clause  (c.)  of  this  subparagraph,
32  which  shall  apply generally to any local government, the power granted
33  by this subparagraph shall be in addition to and not in substitution for
34  any other power and the provisions of this subparagraph shall apply only
35  to local governments which adopt a plan of [~~apportionment~~] districting
36  or redistricting thereunder.
37     (a.)  A  plan  of [~~apportionment~~] districting or redistricting adopted
38  under this subparagraph shall comply with the following standards, which
39  shall have priority in the order herein set forth, to the extent  appli-
40  cable:
41     (i.)  [~~The plan shall provide substantially equal weight for the popu-~~
42  ~~lation of that local government in the allocation of  representation  in~~
43  ~~the local legislative body.~~
44     ~~(ii.)  In  such plan adopted by a county, no town except a town having~~
45  ~~more than one hundred and ten per cent of a full ratio for  each  repre-~~
46  ~~sentative,  shall  be  divided in the formation of representation areas.~~
47  ~~Adjacent representation areas in the same town or city shall not contain~~
48  ~~a greater excess in population than five per cent of a  full  ratio  for~~
49  ~~each representative.~~
50     ~~(iii.)  The plan shall provide substantially fair and effective repre-~~
51  ~~sentation for the people of the local government as organized  in  poli-~~
52  ~~tical parties.~~
53     ~~(iv.)  Representation  areas  shall  be  of  convenient and contiguous~~
54  ~~territory in as compact form as practicable.~~] If such plan of  district-
55  ing  or  redistricting includes only single-member districts, such
56  districts shall be as nearly equal in population as is practicable;  the

A. 229--C                              3

1  difference in population between the most and least populous district
2  shall not exceed five percent of the mean population of all districts.
3  If such plan of districting or redistricting includes multi-member
4  districts, the plan shall provide substantially equal weight for the
5  population of that local government in the allocation of representation
6  in the local legislative body; and
7    (ii.) Districts shall not be drawn with the intent or result of deny-
8  ing or abridging the equal opportunity of racial or language minority
9  groups to participate in the political process or to diminish their
10 ability to elect representatives of their choice; and
11   (iii.) Districts shall consist of contiguous territory; and
12   (iv.) Districts shall be as compact in form as practicable; and
13   (v.) Districts shall not be drawn to discourage competition or for the
14 purpose of favoring or disfavoring incumbents or other particular candi-
15 dates or political parties. The maintenance of cores of existing
16 districts, of pre-existing political subdivisions including cities,
17 villages, and towns, and of communities of interest shall also be
18 considered. To the extent practicable, no villages or cities or towns
19 except those having more than forty percent of a full ratio for each
20 district shall be divided; and
21   (vi.) Districts shall be formed so as to promote the orderly and effi-
22 cient administration of elections.
23   (b.) A plan of [apportionment] districting or redistricting adopted by
24 a county under this subparagraph may provide that mayors of cities or
25 villages, supervisors of towns or members of the legislative bodies of
26 cities, towns, or villages, who reside in the county shall be eligible
27 to be elected as members of the county legislative body.
28   § 3. This act shall take effect immediately.

Legislative Information - LBDC

# NEW YORK STATE ASSEMBLY
## MEMORANDUM IN SUPPORT OF LEGISLATION
### submitted in accordance with Assembly Rule III, Sec 1(f)

BILL NUMBER: A229C          REVISED 05/26/2021

SPONSOR: Paulin

TITLE OF BILL:

An act to amend the municipal home rule law, in relation to the division of a county into districts for the apportionment of members of its local legislative body

PURPOSE OR GENERAL IDEA OF BILL:

To provide that no county shall supersede any state law which relates to the division of any county into districts for the purposes of apportionment

SUMMARY OF SPECIFIC PROVISIONS:

Section one amends section 34 of the municipal home rule law by adding a new subdivision 4 which provides that notwithstanding any local law to the contrary, any plan of districting or redistricting adopted pursuant to a county charter or charter law relating to the division of any county, except a county wholly contained within a city, into districts for the purpose of the apportionment or reapportionment of members of its local legislative body shall be subjected to federal and state constitutional requirements and shall comply with the following standards, which shall have priority in the order herein set forth, to the extent applicable:

a. If such plan of districting or redistricting includes only single-member districts, such districts shall be as nearly equal in population as is practicable; the difference in population between the most and least populous district shall not exceed five percent of the mean population of all districts. If such plan of districting or redistricting includes multi-member districts, the plan shall provide substantially equal weight for the population of that county in the allocation of representation in the legislative body of that county; and

b. Districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minority groups to participate in the political process or to diminish their ability to elect representatives of their choice; and

c. Districts shall consist of contiguous territory; and

d. Districts shall be as compact in form as practicable; and

e. Districts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties. The maintenance of cores of existing districts, of preexisting political subdivisions including cities, villages, and towns, and of communities of interest shall also be considered. To the extent practicable, no villages, cities or towns

4/6/22, 1:11 PM                                          Legislative Information - LBDC

except those having more than forty percent of a full ratio for each
district shall be divided; and

f. Districts shall be formed so as to promote the orderly and efficient
administration of elections.


Section two amends subparagraph 13 of paragraph a of subdivision 1 of
section 10 of the municipal home rule law to mirror new subdivision 4 of
section 34 of the municipal home rule law as described above and to make
other conforming changes.

Section three provides the effective date.


JUSTIFICATION:

The Municipal Home Rule Law (MHRL) contains specific guidelines for
county redistricting. The guidelines include a directive that counties
should follow political subdivision lines to the extent applicable
during redistricting.

In 1991, a county League of Women Voters challenged their county's
legislative redistricting in State Supreme Court on the ground that it
ignored the state guidelines. The Court ruled that the county was immune
from the directives of MHRL, a finding that was upheld in the Appellate
Division. It stated that the county "operates under a charter form of
government and its reapportionment plans are adopted pursuant to its
charter, not Municipal Home Rule Law Sec 10(1) (a) (13)(a)." According-
ly, charter counties are not legally required to follow the State redis-
tricting standards set forth in MHRL. The State should extend the reach
of the MHRL guidelines on redistricting to cover charter counties so
that statutory provisions for electoral procedures would be uniformly
applied in New York State.

In the years since this bill was originally introduced in 2002, the
consensus on which standards should govern redistricting has evolved.
This bill updates the provisions of MHRL Sec 10(1)(a) (13) (a) and
applies those provisions to charter counties by adding identical
provisions to Section 34 of MHRL, which covers charter counties.
Several of the standards included in this bill were part of the 2014
amendment to the New York State Constitution, which applied redistrict-
ing standards to the drawing of congressional and state legislative
districts. By adding these standards to MHRL, they would also apply to
the drawing of county legislative districts. The changes set forth in
this bill will extend generally accepted standards for representation to
all the people of New York.


LEGISLATIVE HISTORY:

A.426b reported to rules in 2019 and advanced to third reading cal.399
in 2020 / Same as S.4611a, advanced to third reading and committed to
rules in 2019 and referred to local government in 2020.

A.446 of 2017 and 2018, referred to local governments.

A.1408 of 2015 and 2016,referred to local governments.

A.501 of 2013 and 2014,referred to local governments.

A.142 of 2011 and 2012,referred to local governments.

A.782 of 2009 and 2010,referred to local governments.

A.1017 of 2007 and 2008,referred to local governments.

A.1773 of 2005 and 2006,referred to local governments.

A.5008 of 2003 and 2004,recommitted to local governments.

A.10698 of 2002, referred to local governments.


**FISCAL IMPLICATIONS**:

None.


**EFFECTIVE DATE**:
Immediately.

**Exhibit B**

**Councilperson Lurvey offered the following resolution and moved its adoption, which resolution was declared adopted after a poll of the members of this Board:**

**RESOLUTION NO. 92 - 2022**

**A RESOLUTION ESTABLISHING THE TOWN OF NORTH HEMPSTEAD NONPARTISAN TEMPORARY REDISTRICTING COMMISSION AND APPOINTING ITS MEMBERS.**

**WHEREAS**, the Town Board previously adopted a ward district map by resolution, duly adopted, pursuant to Section 15A-1 of the Town Code; and

**WHEREAS**, the Town Board is empowered pursuant to Section 51 of the New York State Town Law to establish non-compensated advisory commissions and committees; and

**WHEREAS**, the Town Board (the "Board") wishes to create a nonpartisan temporary redistricting commission to act in an advisory capacity to the Board in resetting the ward district map in a manner consistent with the 2020 census data; and

**WHEREAS**, the Board wishes to create said commission and appoint members.

**NOW THEREORE, BE IT**

**RESOLVED** that

(1)   there shall be a nonpartisan temporary redistricting commission (the "Commission") established to advise on the reapportionment of the North Hempstead Town council districts as a result of the 2020 federal decennial census.  The Commission shall be tasked with analyzing existing district maps as compared to the most recent census data and if necessary, developing and presenting a reconfigured map to the Town Board for approval.

(2)   The Commission shall consist of seven members, who shall serve without compensation, and be appointed as follows: each voting member of the Town Board will nominate for appointment to the Commission one person for a total of seven members. The Commission chairperson will be appointed by the Town Board from the Commission members. The Commission will select a vice chairman and a secretary at their first meeting.

(3)   The members of the Commission shall be Town of North Hempstead residents.

(4)   Members of the Commission shall: (1) not hold or have held a political party leadership position above that of committee person since January 2012; (2) not have served as an elected official at any level of government since January 2012; (3) not be related to current Town elected officials; (4) not be current Town employees, vendors of the Town or a consultant of the Town; (5) not be a registered lobbyist; and (6) not be an employee of any consultant engaged to assist the Commission or otherwise have a conflict of interest.

(5)   The members of the Commission serve at the pleasure of the Town Board.

(6)   In the event of a vacancy by death, resignation or otherwise, a new member shall be appointed by the Town Board member whose nominee vacated the position. The proposed replacement member to the Commission shall be appointed by a letter from a Town Board elected official. The letter shall be filed with the Town Clerk with a copy delivered to the Town Attorney's office. In the event of a vacancy or a new appointment to the Commission, the newly appointed Commission member shall serve the balance of the term remaining from the vacated seat.

(7)   The Commission shall be responsible for analyzing the 2020 census data to determine whether there is a need to reconfigure the council districts and for presenting a reconfigured map to the Town Board. The Commission shall hold at least three redistricting public hearings in different communities throughout North Hempstead. All public hearings and meetings shall be called by the chairperson. The chairperson and/or vice chairperson must be present at all meetings and hearings.  All hearings shall be held in public buildings on notice to the public through appropriate media outlets.

(8)   No later than May 30, 2022, the chair of the Commission shall submit a written report to the Town Board with any recommendations on the reconfiguration of council district lines. The report must be approved by four voting members of the Commission. All recommendations from the Commission shall be available for public inspection at the office of the Town Clerk.

(9)   To aid the Commission in carrying out its function, the Town Board may approve, by resolution, contracts with consultants to provide analyzing services and legal advice throughout this process. Agencies and departments of Town government shall be required

to provide assistance to the Commission as requested.

(10)  The Commission shall take all action by not less than four affirmative votes of its members.  The Commission shall conduct all meetings in accordance with applicable law.

(11)  Any plan adopted by the Town Board shall meet all constitutional and statutory requirements.

; and be it further

**RESOLVED** that the Town Board makes the following appointments to the Commission:

Supervisor nominee: Mary Kay Barket
District #1 nominee: Dana Boylan (Chairperson)
District #2 nominee: Jill Wasser
District #3 nominee: Sumeet Datt
District #4 nominee: Patricia Schneider
District #5 nominee: David Yaudoon Chiang
District #6 nominee: Harrison Feuer

; and be it further

**RESOLVED** that any future appointments to the Commission shall be made by letter request from the Town Board member and filed with the Town Clerk with a copy to the Town Attorney's office.

**Dated:**   Manhasset, New York

         February 17, 2022

The vote on the foregoing resolution was recorded as follows:

Ayes: Councilperson Dalimonte, Councilperson Lurvey, Councilperson Troiano, Councilperson Zuckerman.

Nays: Councilperson Adhami, Councilperson Walsh, Supervisor DeSena.

# Exhibit C

| DISTRICT | Total Population Tabulation | | | | Racial Demographics as a Percent of Total Population | | | | Percent | Racial Demographics as a percent of VAP | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | All Persons | Target | Dev. | Difference | White | Black | Hispanic | Minority | Voting Age | White | Black | Hispanic | Minority |
| 1 | 37,895 | 39,626 | 4.4%▲ | -1,731 | 34.20% | 21.36% | 36.79% | 65.80% | 78.13% | 36.38% | 22.12% | 32.93% | 63.62% |
| 2 | 38,000 | 39,626 | 4.1%▲ | -1,626 | 54.38% | 1.71% | 6.53% | 45.62% | 76.86% | 56.98% | 1.69% | 5.89% | 43.02% |
| 3 | 40,924 | 39,626 | ▼3.3% | 1,298 | 56.39% | 2.31% | 15.82% | 43.61% | 81.03% | 59.43% | 2.39% | 14.45% | 40.57% |
| 4 | 40,174 | 39,626 | 1.38%✓ | 548 | 66.58% | 2.59% | 7.89% | 33.42% | 77.54% | 68.08% | 2.79% | 7.70% | 31.92% |
| 5 | 39,288 | 39,626 | -0.85%✓ | -338 | 51.23% | 1.06% | 7.22% | 48.77% | 79.29% | 54.77% | 1.11% | 6.94% | 45.23% |
| 6 | 41,477 | 39,626 | ▼4.7% | 1,851 | 70.99% | 1.46% | 15.01% | 29.01% | 75.57% | 72.57% | 1.53% | 14.22% | 27.43% |

| | |
|---|---|
| Assigned | 237758 |
| Total Pop | 237758 |
| Unassigned | 0 |

| DISTRICT | Total | Total | | | Total | | % Minority | Amer Indian | Asian | Non Hisp Other | Total | Non White | Haw-Pac | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | All Persons | White Alone | Black Alone | % Black | Hispanic | % Hispanic | | | | | One Race | Non White | Haw-Pac | Total |
| 1 | 37,885 | 12,960 | 8,093 | 21.4% | 13,941 | 36.8% | 65.80% | 325 | 3,203 | 23,954 | 33,308 | 24,935 | 11 | 24,935 |
| 2 | 38,000 | 20,663 | 651 | 1.7% | 2,482 | 6.5% | 45.62% | 68 | 13,519 | 35,518 | 35,987 | 17,337 | 4 | 17,337 |
| 3 | 40,924 | 23,075 | 946 | 2.3% | 6,473 | 15.8% | 43.61% | 109 | 9,915 | 34,451 | 37,175 | 17,849 | 10 | 17,849 |
| 4 | 40,174 | 26,746 | 1,041 | 2.6% | 3,168 | 7.9% | 33.42% | 74 | 8,188 | 37,006 | 37,472 | 13,428 | 33 | 13,428 |
| 5 | 39,288 | 20,127 | 417 | 1.1% | 2,836 | 7.2% | 48.77% | 126 | 15,194 | 36,452 | 37,154 | 19,161 | 8 | 19,161 |
| 6 | 41,477 | 29,444 | 607 | 1.5% | 6,226 | 15.0% | 29.01% | 273 | 4,866 | 35,251 | 38,147 | 12,033 | 11 | 12,033 |

| DISTRICT | VA Persons | VA White | VA Black | VA Hispanic | VA Non Hisp | VA Non Hisp White | VA Asian | VA Non Hisp Other | VA NATIVE AM | VA HAW-PAC | VA Minority | VA one Race |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Voting Age Persons | | | | | | |
| 1 | 29,607 | 10,771 | 6,550 | 9,751 | 19,856 | 9,902 | 2,639 | 135 | 31 | 8 | 18,836 | 26,314 |
| 2 | 29,206 | 16,641 | 494 | 1,721 | 27,485 | 16,331 | 9,958 | 115 | 29 | 4 | 12,565 | 27,917 |
| 3 | 33,161 | 19,707 | 791 | 4,793 | 28,368 | 19,012 | 7,580 | 292 | 31 | 8 | 13,454 | 30,514 |
| 4 | 31,150 | 21,206 | 869 | 2,398 | 28,752 | 20,845 | 5,966 | 192 | 13 | 20 | 9,944 | 29,114 |
| 5 | 31,153 | 17,063 | 345 | 2,163 | 28,990 | 16,632 | 11,213 | 130 | 42 | 5 | 14,090 | 29,705 |
| 6 | 31,344 | 22,745 | 480 | 4,458 | 26,886 | 22,095 | 3,642 | 175 | 24 | 5 | 8,599 | 29,260 |

**Exhibit D**

## Current

| DISTRICT | All Persons | Target | Dev. | Difference | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 37,895 | 39,626 | -4.4% ▲ | -1,731 | 34.20% | 21.36% | 36.79% | 8.45% | 65.80% |
| 2 | 38,000 | 39,626 | -4.1% ▲ | -1,626 | 54.38% | 1.71% | 6.53% | 35.58% | 45.62% |
| 3 | 40,924 | 39,626 | ▼3.3% | 1,298 | 56.39% | 2.31% | 15.82% | 24.23% | 43.61% |
| 4 | 40,174 | 39,626 | 1.38%✓ | 548 | 66.58% | 2.59% | 7.89% | 20.38% | 33.42% |
| 5 | 39,288 | 39,626 | -0.85%✓ | -338 | 51.23% | 1.06% | 7.22% | 38.67% | 48.77% |
| 6 | 41,477 | 39,626 | ▼4.7% | 1,851 | 70.99% | 1.46% | 15.01% | 11.73% | 29.01% |

Assigned 237758
Total Pop 237758
Unassigned 0

Racial Demographics as a percent of VAP

| DISTRICT | Percent Voting Age | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|
| 1 | 78.13% | 36.38% | 22.12% | 32.93% | 8.91% | 63.62% |
| 2 | 76.86% | 56.98% | 1.69% | 5.89% | 34.10% | 43.02% |
| 3 | 81.03% | 59.43% | 2.39% | 14.45% | 22.86% | 40.57% |
| 4 | 77.54% | 68.08% | 2.79% | 7.70% | 19.15% | 31.92% |
| 5 | 79.29% | 54.77% | 1.11% | 6.94% | 35.99% | 45.23% |
| 6 | 75.57% | 72.57% | 1.53% | 14.22% | 11.62% | 27.43% |

## Option 1

| DISTRICT | All Persons | Target | Dev. | Difference | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 39,663 | 39,626 | 0.09%✓ | 37 | 35.20% | 20.42% | 35.31% | 9.76% | 64.80% |
| 2 | 39,496 | 39,626 | -0.33%✓ | -130 | 60.03% | 2.25% | 10.00% | 26.17% | 39.97% |
| 3 | 39,334 | 39,626 | -0.74%✓ | -292 | 56.50% | 1.91% | 13.44% | 26.97% | 43.50% |
| 4 | 39,729 | 39,626 | 0.26%✓ | 103 | 41.98% | 2.45% | 7.30% | 46.57% | 58.02% |
| 5 | 39,898 | 39,626 | 0.69%✓ | 272 | 72.28% | 1.06% | 6.39% | 17.27% | 27.72% |
| 6 | 39,638 | 39,626 | 0.03%✓ | 12 | 69.64% | 1.57% | 16.23% | 11.80% | 30.36% |

Assigned 237758
Total Pop 237758
Unassigned 0

Racial Demographics as a percent of VAP

| DISTRICT | Percent Voting Age | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|
| 1 | 78.02% | 37.35% | 21.18% | 31.66% | 10.10% | 62.65% |
| 2 | 79.35% | 62.70% | 2.23% | 9.21% | 24.83% | 37.30% |
| 3 | 80.01% | 59.62% | 2.00% | 12.23% | 25.42% | 40.38% |
| 4 | 79.99% | 46.24% | 2.53% | 6.92% | 43.13% | 53.76% |
| 5 | 74.30% | 73.53% | 1.18% | 6.26% | 16.34% | 26.47% |
| 6 | 76.79% | 71.19% | 1.61% | 15.41% | 11.63% | 28.81% |

## Option 2

| DISTRICT | All Persons | Target | Dev. | Difference | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 39,186 | 39,626 | -1.11%✓ | -440 | 35.10% | 20.97% | 36.03% | 8.60% | 64.90% |
| 2 | 39,351 | 39,626 | -0.69%✓ | -275 | 59.12% | 2.35% | 10.56% | 26.51% | 40.88% |
| 3 | 40,088 | 39,626 | 1.17%✓ | 462 | 53.77% | 1.45% | 12.91% | 30.60% | 46.23% |
| 4 | 39,597 | 39,626 | -0.07%✓ | -29 | 45.45% | 2.50% | 6.80% | 43.57% | 54.55% |
| 5 | 39,898 | 39,626 | 0.69%✓ | 272 | 72.28% | 1.06% | 6.39% | 17.27% | 27.72% |
| 6 | 39,638 | 39,626 | 0.03%✓ | 12 | 69.64% | 1.57% | 16.23% | 11.80% | 30.36% |

Assigned 237758
Total Pop 237758
Unassigned 0

Racial Demographics as a percent of VAP

| DISTRICT | Percent Voting Age | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|
| 1 | 78.35% | 37.33% | 21.68% | 32.23% | 9.04% | 62.67% |
| 2 | 78.90% | 61.72% | 2.36% | 9.92% | 25.05% | 38.28% |
| 3 | 79.31% | 56.89% | 1.50% | 11.77% | 28.99% | 43.11% |
| 4 | 80.90% | 49.88% | 2.56% | 6.30% | 40.15% | 50.12% |
| 5 | 74.30% | 73.53% | 1.18% | 6.26% | 16.34% | 26.47% |
| 6 | 76.79% | 71.19% | 1.61% | 15.41% | 11.63% | 28.81% |

## Option 3

| DISTRICT | All Persons | Target | Dev | Difference | White | Black | Hispanic | Asian | Minority | Percent Voting Age | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 39,186 | 39,626 | -1.11% ✓ | -440 | 35.10% | 20.97% | 36.03% | 8.60% | 64.90% | 78.35% | 37.33% | 21.68% | 32.23% | 9.04% | 62.67% |
| 2 | 39,663 | 39,626 | 0.09% ✓ | 37 | 55.84% | 1.73% | 7.34% | 33.26% | 44.16% | 77.32% | 58.41% | 1.71% | 6.82% | 31.69% | 41.59% |
| 3 | 39,633 | 39,626 | 0.02% ✓ | 7 | 56.22% | 2.08% | 15.89% | 24.60% | 43.78% | 80.90% | 59.31% | 2.13% | 14.49% | 23.21% | 40.69% |
| 4 | 40,603 | 39,626 | 2.46% ✓ | 977 | 50.61% | 1.05% | 7.18% | 39.37% | 49.39% | 79.25% | 54.15% | 1.09% | 6.91% | 36.67% | 45.85% |
| 5 | 40,005 | 39,626 | 0.96% ✓ | 379 | 67.53% | 2.57% | 7.02% | 20.25% | 32.47% | 76.54% | 69.01% | 2.79% | 6.73% | 19.19% | 30.99% |
| 6 | 38,668 | 39,626 | -2.42% ✓ | -958 | 70.52% | 1.49% | 15.72% | 11.60% | 29.48% | 75.99% | 72.09% | 1.56% | 14.85% | 11.51% | 27.91% |

Total Population Tabulation; Racial Demographics as a Percent of Total Population; Racial Demographics as a percent of VAP

Assigned 237758
Total Pop 237758
Unassigned 0

## Option 9

| DISTRICT | All Persons | Target | Dev | Difference | White | Black | Hispanic | Asian | Minority | Percent Voting Age | White | Black | Hispanic | Asian | Minority |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 38,993 | 39,626 | -1.60% ✓ | -633 | 34.74% | 20.83% | 35.83% | 9.33% | 65.26% | 78.02% | 36.92% | 21.60% | 32.12% | 9.65% | 63.08% |
| 2 | 39,848 | 39,626 | 0.56% ✓ | 222 | 61.43% | 1.75% | 8.23% | 26.87% | 38.57% | 77.71% | 63.97% | 1.75% | 7.64% | 25.42% | 36.03% |
| 3 | 40,301 | 39,626 | 1.70% ✓ | 675 | 53.20% | 2.33% | 16.06% | 27.30% | 46.80% | 81.05% | 56.39% | 2.39% | 14.72% | 25.76% | 43.61% |
| 4 | 40,450 | 39,626 | 2.08% ✓ | 824 | 46.26% | 1.06% | 6.24% | 44.68% | 53.74% | 80.76% | 50.71% | 1.08% | 5.85% | 41.23% | 49.29% |
| 5 | 39,498 | 39,626 | -0.32% ✓ | -128 | 69.80% | 2.52% | 7.10% | 17.65% | 30.20% | 74.73% | 70.88% | 2.80% | 7.00% | 16.69% | 29.12% |
| 6 | 38,668 | 39,626 | -2.42% ✓ | -958 | 70.52% | 1.49% | 15.72% | 11.60% | 29.48% | 75.99% | 72.09% | 1.56% | 14.85% | 11.51% | 27.91% |

Total Population Tabulation; Racial Demographics as a Percent of Total Population; Racial Demographics as a percent of VAP

Assigned 237758
Total Pop 237758
Unassigned 0

# Exhibit E



Council Plan
# North Hempstead Opt 1

**AutoBound Edge MAP - Based on: 2020 Census Geography, 2020 PL94-171**

Includes Population Adjusted for Incarcerated Individuals by the State of New York Task Force on Demographic Research and Reapportionment

Council Plan
## North Hempstead Opt 2



EDGE 2020
Professional Redistricting

**AutoBound Edge MAP - Based on: 2020 Census Geography, 2020 PL94-171**

Includes Population Adjusted for Incarcerated Individuals by the State of New York Task Force on Demographic Research and Reapportionment



Council Plan
**North Hempstead Opt 3**
Minimum Change Plan

AutoBound Edge MAP - Based on: 2020 Census Geography, 2020 PL94-171
Includes Population Adjusted for Incarcerated Individuals by the State of New York Task Force on Demographic Research and Reapportionment

EDGE 2020
Professional Redistricting



Council Plan
North Hempstead Opt 9

AutoBound Edge MAP - Based on:  2020 Census Geography, 2020 PL94-171
Includes Population Adjusted for Incarcerated Individuals by the State of New York Task Force on Demographic Research and Reapportionment

EXHIBIT C



# EXHIBIT D

## RESOLUTION NO. 303 - 2022

## A PUBLIC HEARING TO CONSIDER THE PROPOSED AMENDED WARD DISTRICT LINES FOR TOWN OF NORTH HEMPSTEAD COUNCILMANIC DISTRICTS.

**WHEREAS,** pursuant to Section 15A-1 of the Code of the Town of North Hempstead (the "Code"), the Board of the Town of North Hempstead (the "Town") shall make appropriate revisions of the boundaries of the existing six council district wards where the results of a regular federal census indicate that the districts do not contain a substantially equal number of inhabitants; and

**WHEREAS,** the Code further provides that the wards shall be divided so that the number of inhabitants in each ward, based upon the last regular federal census, shall be substantially equal, with wards composed of convenient and contiguous territory in as compact form as practicable; and

**WHEREAS,** by Resolution No. 92-2022, duly adopted at a meeting of the Town Board held on February 17, 2022, the Town Board established a nonpartisan Temporary Redistricting Commission (the "Commission") charged with the duty of analyzing the existing ward district map and, if necessary, resetting the ward district map by developing and presenting an amended ward district map to the Town Board, consistent with 2020 census data; and

**WHEREAS,** the 2020 census data demonstrates that the six existing council ward districts do not contain substantially equal numbers of inhabitants; and

**WHEREAS,** the Commission has analyzed the existing ward district map and has recommended that the ward district map be revised in accordance with 2020 census data; and

**WHEREAS,** the existing district boundary lines must be altered to correct the deviation, and to balance each district population so that all six districts are substantially equal; and

**WHEREAS,** on May 9, 2022, May 12, 2022, and May 17, 2022, on notice duly published, the Commission held public hearings for the purpose of receiving input, comments and suggestions from the residents of the Town on the redistricting process and the current maps; and

**WHEREAS,** the Commission created a website (www.northhempsteadny.gov/redistricting) for the submission of written input, comments, and suggestions from the residents of the Town on the redistricting process and the current maps; and

**WHEREAS,** the Commission considered various proposals to revise the boundaries of the existing six council district wards to comply with the 2020 census results; and

**WHEREAS,** the Commission identified four alternative redistricting plans that each comply with the substantially equal population requirement; and

**WHEREAS,** on May 30, 2022, the Commission presented a Report Recommending Amendments to the Existing Ward District Map, Pursuant to 2020 Census Data and Town Code § 15A-1 with supporting Exhibits (the "Recommendation"), a copy of which is annexed hereto and made a part hereof as Exhibit A; and

**WHEREAS,** the Board wishes to convene a public meeting to consider the Recommendation and the adoption of proposed revisions to the boundaries of the Town council district election wards made by the map attached as OPTION 1, a copy of which is annexed hereto and made a part hereof as Exhibit B-1; and

**WHEREAS,** the Board received public comment on this Recommendation and the proposed revisions at a public hearing duly held pursuant to notice given in accordance with law on June 16, 2022; and

**WHEREAS,** the Town Board wishes to adopt the Recommendation and the proposed revisions to the existing ward map, attached as OPTION 1 in Exhibit B-1 (the "Final Map").

### NOW THEREFORE, BE IT

**RESOLVED,** that for the purposes of revising that existing Town Ward Map, the Town hereby revises the existing six ward districts as set forth and described in the documents entitled: (1) Town of North Hempstead 2022 Proposed Ward Map Final Changes; (2) Metes and Bounds Description for Town of North Hempstead 2022 Ward Map Final Changes; (3) Town of North Hempstead - Proposed 2022 Ward Maps Final Changes - Old Wards vs. New Wards; (4) Town of North Hempstead - Proposed 2022 Ward Map Final Changes - Demographic Statistics; (5) Town of North Hempstead - 2022 Ward Plan Village Assignments - Final Changes; and (6) Town of North Hempstead - 2022 Ward Plan ED Assignments - Final Changes, together set forth in Exhibit B-1, which is hereby attached to and made a part of this Resolution; and be it further

**RESOLVED,** that based upon the aforementioned documents, and all proceedings heretofore conducted in connection with the proposed revisions of the boundaries of the existing six council district wards of the existing Ward system, the Board finds that the revised boundaries of the existing wards are composed of substantially equal numbers of inhabitants, and of contiguous territory in compact form, so that no election district heretofore created under

New York State Election Law shall contain parts of two or more wards; and be it further

**RESOLVED,** that the Board hereby authorizes and directs the Town Clerk to file this Resolution in the Town Clerk's Office, and cause copies of the Resolution to be filed with the Nassau County Clerk, and the Nassau County Board of Elections; and be it further

**RESOLVED,** that upon the filing of this Resolution as aforesaid, the Board hereby declares that the revisions to the boundaries of the existing Ward system for the Town, and the wards thereof as set forth in Exhibit B-1 of this Resolution, shall be immediately established; and be it further

**RESOLVED**, that the Board hereby authorizes and directs the Commissioner of Planning to make any necessary technical adjustments to the Metes and Bounds description of the Ward boundaries in the Final Map set forth in Exhibit B-1 to conform such description to the Ward Plan Election District assignments existing as of the date of this resolution as also set forth in Exhibit B-1; and be it further

**RESOLVED,** that the Board hereby authorizes and directs the Town Clerk and the Town Attorney to file all documents and instruments and to take all other action necessary to effectuate the foregoing resolutions.

Dated:          Manhasset, New York
                June 16, 2022

The vote on the foregoing resolution was recorded as follows:

Ayes: Councilperson Dalimonte, Councilperson Lurvey, Councilperson Troiano, Councilperson Zuckerman,

Nays: Councilperson Adhami, Councilperson Walsh, Supervisor DeSena.