UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAUL A. PEREIRA, individually and as MAYOR
OF VILLAGE OF MINEOLA, THE VILLAGE OF
MINEOLA, JAMES J. MCHUGH, JR.,
COUNCILMAN DENNIS J. WALSH, individually
and as member of the Town Board of the Town of
North Hempstead, and COUNCILMAN DAVID A.
ADHAMI, individually and as member of the Town
Board of the Town of North Hempstead,

                           Plaintiffs,

          v.

TOWN OF NORTH HEMPSTEAD, TOWN
BOARD OF THE TOWN OF NORTH
HEMPSTEAD and the NASSAU COUNTY
BOARD OF ELECTIONS,

                           Defendants.

**MEMORANDUM AND ORDER**
22-CV-06231 (HG)

**HECTOR GONZALEZ**, United States District Judge:

This is an action brought by the Village of Mineola,[1] the Mineola Mayor, Paul A. Pereira,

Councilman Dennis J. Walsh, Councilman David A. Adhami, and James J. McHugh, a private

citizen, (collectively, "Plaintiffs") against the Town of North Hempstead, the Town Board of the

Town of North Hempstead, and the Nassau County Board of Elections.  Plaintiffs assert

violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth

Amendment, as well as New York's Municipal Home Rule Law ("MHRL") §§ 10 and 23, and

the New York State Constitution.  ECF No. 27-1 ("Am. Compl.") ¶¶ 70–115.  All Defendants,

except the Nassau County Board of Elections, (collectively the "Town Defendants," or

---

[1]     The Village of Mineola is a political subdivision in the Town of North Hempstead.  *See*
Am. Compl. ¶ 15.

"Defendants") have moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) (the "Motion").  ECF No. 24.  For the reasons set forth below, the Motion is granted.

## BACKGROUND

The Town of North Hempstead (the "Town") is a municipality in Nassau County with a population of 237,639.  Am. Compl. ¶ 25.  North Hempstead's governing body is the Town Board, a seven-member board consisting of six councilpersons—each representing a single, geographically defined election district ("District")—and the Town Supervisor, who is elected by the Town at large.  *Id*. ¶¶ 24–26, 31.  The six councilpersons on the Town Board serve staggered, four-year terms, with elections every two years.  *Id*. ¶ 61.

Every ten years, after the results of the U.S. Census Bureau's Decennial Census are published, the Town redraws the boundaries of its six Districts.  *Id.* ¶ 24.  Besides requiring that the Districts be of equal population, the provision of the Town Code governing redistricting only requires that the redrawn districts be "composed of convenient and contiguous territory in as compact form as practicable."  *Id*. ¶ 27 (citing North Hempstead Town Code § 15A-1).

This redistricting cycle, the Town created a "Nonpartisan Temporary Redistricting Commission" (the "Commission") to "analyz[e] the existing district maps . . . [and] develop[] and present[] a reconfigured map to the Town Board for approval."  *Id*. ¶¶ 33–34.  In May 2022, the Commission released its final report (the "Final Report"), which included nine options for how the Town Board could redraw the District lines.  *Id*. ¶ 46; *see also* ECF No. 1 at 26–34.

Option one presented in the Final Report redrew Districts 4 and 5 so that "District 4 contains 70% of the core of the existing District 5[,] . . . [and] District 5 has 75% of the core of existing District 4."  Am. Compl. ¶ 60.  According to the Commission's Final Report:

> The[] changes [in option one] are made to follow public comments submitted in-person and online.  They create a new Asian minority majority council district (district 4), incorporate the Herricks school district in two council districts instead of four, and separate Great Neck North and Great Neck South school zones.  They also place the communities of interest in the Manhasset area in the same council district.

ECF No. 1 at 30.  In June, the Town Board adopted option one as the Approved Redistricting Plan (the "Plan").  Am. Compl. ¶ 47.

## PROCEDURAL HISTORY

On October 14, 2022, Plaintiffs filed the instant action.  ECF No. 1.  On December 14, 2022, the Town Defendants filed a letter requesting a premotion conference on their anticipated motion to dismiss.  ECF No. 18.  The next day, Defendant Nassau County Board of Elections answered the Complaint, ECF No. 19, and filed a letter taking no substantive position on the Town Defendants' anticipated motion to dismiss.  ECF No. 20.  In lieu of a premotion conference, the Court set a briefing schedule on the Town Defendants' motion.  ECF Minute Entry, January 5, 2023.  The Town Defendants filed the Motion on February 2, 2023.  ECF No. 24.  Plaintiffs filed their opposition on March 2, 2023.  ECF No. 26.  On May 13, 2023, the Town Defendants filed their reply.  ECF No. 29.

On March 3, 2023, a day after filing their opposition to the Motion, Plaintiffs filed a letter motion requesting leave to amend the Complaint to clarify factual issues and add a Due Process claim, ECF No. 27, which the Town Defendants opposed, ECF No. 28.  Because the case was

still in its early stages, and because Plaintiffs' Due Process claim is based on the same set of

facts as Plaintiffs' Equal Protection claim, the Court allowed Plaintiffs to amend the complaint.

ECF Minute Entry, March 14, 2023; *see also* ECF No. 27-1 (Am. Compl.).  In addition, the

Court allowed the Town Defendants and Plaintiffs to each file a letter supplementing their

briefing in light of the amendments to the complaint.  *See* ECF No. 30 (Town Defendants'

Supplemental Letter Brief in Support of the Motion); ECF No. 31 (Plaintiffs' Supplemental

Letter Brief in Opposition to the Motion).

## LEGAL STANDARD

### I.     Subject Matter Jurisdiction

When a party moves to dismiss under Rule 12(b)(1) and on other grounds, courts

consider the Rule 12(b)(1) challenge first.  *Mortillaro v. United States*, No. 21-cv-852, 2022 WL

992713, at *1 (E.D.N.Y. Mar. 31, 2022).[2]  "If a court finds that it lacks subject matter

jurisdiction, then the accompanying defenses and objections become moot."  *Id*.  "A plaintiff

asserting subject matter jurisdiction must prove by a preponderance of the evidence that subject

matter jurisdiction exists."  *Id*.

"An essential element of a federal court's subject matter jurisdiction is standing."

*Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 138 (E.D.N.Y. 2021).  "[A] plaintiff seeking

relief in federal court must first demonstrate that he has standing to do so, including that he has a

personal stake in the outcome distinct from a generally available grievance about government."

*Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018).  "To satisfy the constitutional requirement of

---

[2]     Unless noted, case law quotations in this order accept all alterations and omit all internal
quotation marks, citations, and footnotes.

standing, a plaintiff in federal court bears the burden of establishing that (1) he has suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Mohr v. Erie Cnty. Legislature*, No. 23-cv-39, 2023 WL 3075956, at *5 (W.D.N.Y. Apr. 24, 2023). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the invasion of a legally protected interest that is concrete and particularized, *i.e.*, which affects the plaintiff in a personal and individual way." *Id.*

"In addition to these constitutional limitations on federal court jurisdiction, the standing inquiry also involves . . . prudential limitations." *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-cv-2169, 2023 WL 2504734, at *5 (S.D.N.Y. Mar. 14, 2023). The prudential standing doctrine provides that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* Courts should "refrain[] from adjudicating abstract questions of wide public significance which amount to generalized grievances," and should "require that the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.*

## II.   Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* However, the Court does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## DISCUSSION

Count one of the Amended Complaint alleges that the Plan "violates the provisions of the 14th Amendment and denies residents of the Town equal protection under the law and violates the one-person-one vote principle," and "effects a deprivation or diminution of voting power violative of Equal Protection." Am. Compl. ¶¶ 71, 79. Count two alleges that the Plan "violates the Due Process provisions of the 14th Amendment and impairs Plaintiffs' fundamental right to vote." *Id.* ¶ 83. Plaintiffs insist in their briefing papers that, despite the expansive language in both counts one and two, the Amended Complaint brings a relatively narrow federal claim: Instead of asserting that the entirety of the Plan is unconstitutional, Plaintiffs argue that the Amended Complaint actually takes issue with "a singular, unnecessary *ultra vires* act unrelated to redistricting"—"[t]he swapping of numerical designations of Districts 4 and 5." ECF No. 26 at 13. According to Plaintiffs, this decision "had nothing to do with achieving equal population and had nothing to do with redrawing district lines." *Id.*

The Amended Complaint also appears to raise a number of legal theories that Plaintiffs insist in their briefing papers they are *not* raising: (i) Political gerrymandering claims, *compare* Am. Compl. ¶¶ 49–50 ("The new Districts are drawn to discourage competition and for the

6

purpose of favoring Democratic incumbents and disfavoring Republican incumbents or other particular candidates or political parties."), *with* ECF No. 31 at 1 ("[t]he federal claims are not partisan gerrymandering claims"); (ii) "one-person, one-vote" vote dilution claims, *compare* Am. Compl. ¶¶ 65, 71 ("[T]he 'Plan'[] is unconstitutional in so far as it . . . violates the one-person-one vote principle."), *with* ECF No. 26 at 9 (asserting that Plaintiffs do not allege "that the redrawn districts contain an unacceptable deviation from the statistical mean population");[3] and (iii) claims regarding the effect of the Plan on the Town Board's system of staggered election terms, Am. Compl. ¶¶ 4, 58, 64, 65, 74, 75, 86 (arguing that the Plan is unconstitutional because "certain voters will have the power to vote twice in two years, while others may only be permitted to vote once in six years for the same elective office on the Town Board"), *with* ECF No. 26 at 12–13 (asserting that Plaintiffs are not arguing that the Plan's effect on staggered terms violates the Equal Protection Clause).

If the Court takes Plaintiffs at their word and focuses only on the "swapping" of Districts 4 and 5, it finds that Plaintiffs have failed to establish that any Plaintiff has Article III standing except McHugh.  The Court will first discuss the Town Defendants' motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), before discussing their motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), as it relates to McHugh only.

---

[3]     This is the standard for determining whether a redistricting plan violates the one-person, one-vote principle.  *Evenwel v. Abbott*, 578 U.S. 54, 60 (2016) ("Where the maximum population deviation between the largest and smallest district is less than 10%, the Court has held, a state or local legislative map presumptively complies with the one-person, one-vote rule.").

## I.      Rule 12(b)(1)—Lack of Subject Matter Jurisdiction[4]

Defendants assert in their supplemental briefing that "[t]he amended complaint must be dismissed for lack of standing."[5]   ECF No. 30 at 1.  Specifically, Defendants argue that no Plaintiff has suffered an injury in fact because of the alleged swapping of Districts 4 and 5.[6]   *Id.* at 2.  The Court agrees that all Plaintiffs, except McHugh, lack standing.

Plaintiffs do not explain, and the Court cannot identify, how the alleged swapping of Districts 4 and 5 caused any injury in fact to the Village, Mayor Pereira, Councilman Walsh, or Councilman Adhami.  While the Amended Complaint alleges that "[t]he new lines unnecessarily and unlawfully split the Village of Mineola," Am. Compl. ¶ 52, the Village is split between Districts 2 and 3, *id.* ¶¶ 54–57, not Districts 4 and 5, *id.* ¶ 52.  Mayor Pereira and Councilman

---

[4]       Defendants contend that, besides standing, "[t]he gravamen of the amended complaint is still [P]laintiffs' underlying claim that the Redistricting is a political gerrymander."  ECF No. 30 at 1.  As a result, Defendants argue that the Amended Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  ECF No. 30 at 1; *see Rucho v. Common Cause*, 139 S. Ct. 2484, 2487 (2019) ("Partisan gerrymandering claims present political questions beyond the reach of the federal courts.").  Plaintiffs insist that they are not bringing federal partisan gerrymandering or political redistricting claims, and the Court takes them at their word.

[5]       Plaintiffs note that "the Town did not raise or argue standing in its motion to dismiss." ECF No. 31.  While true, this is irrelevant because "Article III standing is a jurisdictional defense that cannot be waived and indeed may be asserted, by parties or the court, at virtually any stage of a litigation."  *Packer v. Raging Cap. Mgmt., LLC*, No. 15-cv-5933, 2023 WL 2484442, at *3 (E.D.N.Y. Mar. 13, 2023).

[6]       Defendants do not dispute that, if the Court finds that Plaintiffs have adequately alleged that they suffered an injury in fact, that those injuries were caused by the Plan and thus are a direct result of Defendants' actions (adopting the Plan).  Nor do Defendants dispute that a favorable decision would redress Plaintiffs' complained-of injury, as the prior District lines would be restored.  Am. Compl at 25–26.  Accordingly, the only standing issue before the Court is whether Plaintiffs have suffered an injury in fact.  *Mohr*, 2023 WL 3075956, at *5 (listing the three requirements for standing); ECF No. 30 at 1–3 (arguing only that Plaintiffs have not suffered an injury in fact).

8

Walsh were residents of District 3 in the previous map and remain in District 3 in the current map. *Id.* ¶¶ 14, 19.  Similarly, while Councilman Adhami resided in District 5 under the previous district map, he remains in District 5 in the current map. *Id.* ¶ 20.

The only argument Plaintiffs tender as to why the Village, Mayor Pereira, Councilman Walsh, or Councilman Adhami have standing is because "[t]he deprivation of Plaintiffs' right to vote is undoubtedly real and immediate for Article III injury in fact purposes." *See* ECF No. 31 at 2.[7]  First, the Village itself is a nonvoter, none of its residents are directly impacted by the alleged swap of Districts 4 and 5, Am. Compl. ¶ 52, and it does not allege "direct injury based on resource diversion." *Democratic Cong. Campaign Comm. v. Kosinski*, 614 F. Supp. 3d 20, 45 (S.D.N.Y. 2022) (noting that "an organization can establish injury in fact by proving concrete and demonstrable injury to its activities—with the consequent drain on its resources").  Second, Plaintiffs fail to explain how Mayor Pereira, Councilman Walsh, or Councilman Adhami were deprived of their right to vote.[8]  The Plan has had no impact on these Plaintiffs' representation on the Town Board—they are all represented by the same individuals who represented them before the Plan was implemented.  Am. Compl. ¶¶ 14, 19, 20.  Nor does the Plan affect the date when these Plaintiffs will next vote—the date of their next scheduled election is the same as it was before the Plan was adopted. *Id*. ¶ 61.

---

[7]    Plaintiffs cite *Weltner v. Raffensperger*, where the court found standing after plaintiffs claimed that "their right to vote was unlawfully abrogated in violation of the Due Process Clause" after the state cancelled a previously scheduled election.   No. 20-cv-1407, 2020 WL 8116173, at *6 (N.D. Ga. May 18, 2020).  There is no allegation that a previously scheduled election has been canceled in this case.

[8]    The Court further addresses this argument below when it discusses the Substantive Due Process claims as to McHugh.

Plaintiffs do, however, argue that one Plaintiff, McHugh, was concretely injured by the alleged swapping of Districts 4 and 5.  ECF No. 31 at 1–3.  McHugh was previously a resident of District 5; now, after redistricting, he is in District 4.  Am. Compl. ¶¶ 17, 58, 77, 84. Consequently, he is no longer represented by Adhami, the councilperson he previously voted for. *Id.* ¶¶ 58, 62.  Due to the Town Board's staggered terms of office, residents who lived in District 4 and now live in District 5 will not get a chance to vote for a new representative for six years, two years later than they would have otherwise.  *Id.* ¶ 75.  McHugh, however, has had his next election date pushed up—while he will not be able to reelect the councilperson he previously voted for, he will be able to vote for a new councilperson two years *earlier* than he would have otherwise.  *Id*. ¶ 61.  Plaintiffs argue that this still has created an injury because it has "reduc[ed] the period of representation by the councilperson [he] successfully elected."  ECF No. 26 at 1.

Defendants argue that "McHugh has not alleged facts which show he suffered an injury-in-fact by reason of the change in his district number."  ECF No. 30 at 2.  First, they argue that, while McHugh is no longer represented by the councilperson he previously voted for, that councilperson remains on the Board and "will continue to serve as a member of the Town Board for the full length of his term."  *Id*.  Second, they argue that, because his ability to vote for a new councilperson will not be delayed, in fact, it will be accelerated, he has not been *injured* by the impact of redistricting on the Board's staggered terms.  *Id.*  Consequently, "McHugh cannot claim any disadvantage to himself and therefore does not have standing to sue."  *Id.* at 3.

While it is a close call, the Court finds that Plaintiffs have alleged enough to show that McHugh suffered an injury in fact.  In *Gill v. Whitford*, the Supreme Court articulated that Article III standing "is best understood as arising from a burden on . . . plaintiffs' own votes,"

which in the "gerrymandering context . . . arises through a voter's placement in a[n]" allegedly unconstitutional district.  138 S. Ct. at 1931.  Here, McHugh has alleged district-specific harm that is concrete and particularized—he alleges that he will be in a different district in the new map, with a new representative, and will be represented for only two years by his current representative when he previously would have been represented for four.

While the parties, nor the Court, can find any Second Circuit case directly addressing standing in this specific context, at least one federal court has found that similarly situated plaintiffs had standing.  *See League of Women Voters of Chicago v. Wolf*, 965 F. Supp. 2d 1007, 1011 (N.D. Ill. 2013) (finding that individual plaintiffs who live in districts with staggered election terms have standing when they are switched between districts with two different terms after redistricting), *aff'd sub nom. League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722 (7th Cir. 2014).  Other courts have rejected on the merits claims related to shifting of voters between electoral districts and the corresponding assignment of new representatives as part of that process, including representatives who serve staggered terms and will stand for elections according to a different schedule than the voter's prior representative.  *See Donatelli v. Mitchell*, 2 F.3d 508, 515 (3d Cir. 1993); *Republican Party of Oregon v. Keisling*, 959 F.2d 144, 145–46 (9th Cir. 1992); *Mader v. Crowell*, 498 F. Supp. 226, 231 (M.D. Tenn. 1980).  Since standing is a question of subject matter jurisdiction that can never be waived and that courts must raise *sua sponte*, the fact that the courts in these cases addressed the plaintiffs' claims on the merits implicitly supports that plaintiffs similarly situated to McHugh have standing.

Accordingly, the Court finds that Plaintiffs have established McHugh's standing to assert claims under the federal constitution.  However, the Court finds that Plaintiffs have failed to

establish that the Village, Mayor Pereira, Councilman Walsh, and Councilman Adhami have standing because these Plaintiffs have not been impacted by the alleged swapping of Districts 4 and 5 in any "concrete and particularized way." *Gill*, 138 S. Ct. at 1923.  The Court therefore grants Defendants' Rule 12(b)(1) motion as to the Village, Mayor Pereira, Councilman Walsh, and Councilman Adhami and dismisses their federal constitutional claims for lack of subject matter jurisdiction.

## II.      Rule 12(b)(6)—Failure to State a Claim

The Court has already found that only Plaintiff McHugh has standing and has dismissed the other Plaintiffs' claims for lack of subject matter jurisdiction.  The Court will therefore evaluate whether the Amended Complaint's Equal Protection and Due Process claims survive Defendants' motion to dismiss for failure to state a claim as to McHugh only.

### A.      Equal Protection Clause

Plaintiffs' first federal claim contends that Defendants violated McHugh's rights under the Equal Protection Clause when they "arbitrarily and impermissibly reassigned [his] district numbers."  Am. Compl. ¶¶ 71–80.  Plaintiffs argue that this alleged swapping of Districts 4 and 5:  "a) curtailed by fiat the length of time that [McHugh] [was] represented by the councilperson [he] had voted into office through the exercise of the franchise; b) made it impossible for [McHugh] to re-elect the councilperson [he] voted into office; c) arbitrarily re-assigned [McHugh] to a councilperson that [he] did not vote for and who ran in and was elected by voters in an altogether other ward; and d) denied residents of the 'new' District 5 the right to vote for a councilperson for two years beyond that which the Town Code provides (having last voted in 2019, they will now not be able to vote until 2025)."  Am. Compl. ¶ 4.  In essence, Plaintiffs

12

allege that McHugh's election date was unconstitutionally accelerated by two years, giving him less time to be continuously represented than similarly situated residents of the Town who were not shifted into a new District on a different staggered election term.  *Id.* ¶¶ 58, 61–65, 74–75.

"To prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  "He also must show that the disparity in treatment cannot survive the appropriate level of scrutiny."  *Id.* "In cases of discrimination based on non-suspect classifications,"[9] that level of scrutiny is rational basis review.  *Yifru v. Tietz*, No. 22-cv-1385, 2022 WL 956704, at *8 (S.D.N.Y. Mar. 29, 2022).  Under rational basis review, "the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest."  *Id.*; *see also Fierro v. City of N.Y.*, No. 20-cv-9966, 2022 WL 428264, at *7 (S.D.N.Y. Feb. 10, 2022) ("[I]f an individual is not a member of a suspect or quasi-suspect class, they are still afforded limited protection—there, state action that is alleged to be discriminatory is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.").  "Rational basis review contemplates a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might

---

[9]     Plaintiffs have not alleged that McHugh is part of a suspect class, which would require a different level of scrutiny.  *See Marlak v. Dep't of Correction*, No. 21-cv-1399, 2023 WL 1474622, at *9 (D. Conn. Feb. 2, 2023) ("The highest level of scrutiny under the Equal Protection Clause, strict scrutiny, applies to suspect classes, such as classifications based on race, religion, and national origin.").

support it." *Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. N.Y.*, 336 F. Supp. 3d 50, 77

(E.D.N.Y. 2018). "In applying this standard, a defendant's motion to dismiss will be granted

when neither the complaint nor the non-moving party's opposition negate any reasonably

conceivable state of facts that could provide a rational basis for the challenged classification."

*Id*.

The primary disagreement between Defendants and Plaintiffs concerns whether this case

is comparable to other cases where federal courts have examined the impact of redistricting on

staggered election terms. Defendants argue that this case is comparable. McHugh's argument is

that he is being treated differently compared to other individuals who did not have their next

Town Board election accelerated, which is the same theory advanced by the plaintiffs in the

staggered election cases. Defendants note that other federal courts have universally held in this

context that: (i) the differential treatment McHugh is experiencing is based on a non-suspect

classification, and (ii) does not violate the Equal Protection Clause. ECF No. 24 at 13, *see, e.g.*,

*League of Women Voters of Chicago*, 965 F. Supp. 2d at 1013 ("[T]he combined effect of

reapportionment and a staggered election system meets the rational basis test and therefore does

not violate the Equal Protection Clause."); *Donatelli*, 2 F.3d at 515 ("Numerous courts have

concluded that temporary disenfranchisement resulting from the combined effect of reapportionment

and a staggered election system meets the rational-basis test and therefore does not violate the Equal

Protection Clause."); *Keisling*, 959 F.2d at 155 (holding that "the assignment of incumbent

legislators to newly defined districts after reapportionment does not violate the equal protection

clause, even when certain voters will have to wait six years instead of four for their next vote");

*Mader*, 498 F. Supp. at 231 (holding that the "temporary disenfranchisement" of voters that had been

moved from even-numbered district to odd-numbered district so that, under a staggered election plan, they would not vote for senator for another two years, "violates neither the equal protection clause nor any other constitutional provision").

Plaintiffs concede that "redistricting's effect on staggered terms does not violate the equal protection clause," ECF No. 26 at 12–13, but insist that their objections to the Plan are distinguishable from the cases cited by Defendants. Specifically, Plaintiffs argue they are making a vote dilution claim. *Id*. at 6, 9, 10; Am. Compl. ¶¶ 73, 77. They claim that if McHugh's "chosen representative only represents him for one year, when other voters enjoy four years of representation, that too is vote dilution." ECF No. 26 at 10. In cases where federal courts have found that a new redistricting map unconstitutionally diluted plaintiffs' vote, the challenged map is considered "presumptively impermissible." *Evenwel v. Abbott*, 578 U.S. 54, 60 (2016). In that event, the state then has the burden to justify that the map accomplishes permissible goals, *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 363–64, 66 (S.D.N.Y.) (noting that there is only a "burden on the State to justify [the] deviation" in a redistricting plan if plaintiffs can establish that the maximum deviation is over ten percent) (three-judge court), *aff'd mem*, 543 U.S. 997 (2004), such as "maintaining communities of interest and respecting municipal boundaries." *Evenwel*, 578 U.S. at 75 n.15.

While at times the Amended Complaint does appear to reference the "one-person, one-vote," vote dilution standard,[10] the Court finds that what Plaintiffs have articulated here is not a

_____

[10]     *See* Am. Compl. ¶ 67 ("populations were shifted out of existing District 5 . . . when, in fact, existing District 5 was slightly underpopulated and should have received additional population"); *id.* ¶¶ 71, 112 (Plan violates one-person, one-vote principle).

"vote dilution" claim under the Equal Protection Clause as understood by the courts: "[V]ote dilution in the one-person, one-vote cases refers to the idea that each vote must carry equal weight."[11] *Rucho*, 139 S. Ct. at 2501. Plaintiffs are not claiming that the Districts are of unequal size or that McHugh's vote in the next-scheduled election for his district will not carry a weight equal to that of the votes cast by residents of other districts. Instead, they are claiming that McHugh's representation is unequal because he is no longer represented by the councilperson that he voted for in his former district's last election, and he now has a councilperson with a shorter remaining term than he did before. Am. Compl. ¶¶ 4, 61–65. This claim is analogous to the claims raised by plaintiffs in the other cases where federal courts have examined the impact of redistricting on staggered election terms.

Plaintiffs do not cite a single federal case to support their argument that the claim they are making is distinguishable from claims raised in the cases cited by Defendants. The only case that Plaintiffs cite in support of their argument is a Nebraska Supreme Court case, *State ex rel Steinke v. Lautenbaugh*, 642 N.W.2d 132 (Neb. 2002). ECF No. 26 at 14, 15–16. *Lautenbaugh*, however, did not turn on federal law. Rather, the Nebraska Supreme Court affirmed that, pursuant to Nebraska law, the defendant was "not permitted to take into account a political result or political situation" when drawing district lines. *Id*. at 137, 142 ("We agree with the district

---

[11]     "Where the maximum population deviation between the largest and smallest district is less than 10%, the [Supreme] Court has held, a state or local legislative map presumptively complies with the one-person, one-vote rule." *Evenwel*, 578 U.S. at 60. Here, the deviation between the smallest and largest Districts in the Plan is only 1.43%, ECF No. 24 at 6, which Plaintiffs concede is acceptable. ECF No. 26 at 7.

court that the applicable statutes do not authorize an election commissioner to take into account political considerations when adjusting boundaries following a federal decennial census.").

Accordingly, the Court agrees with Defendants, and finds that McHugh has experienced a "temporary disenfranchisement that occurs when reapportionment is combined with a staggered system of elections." *League of Women Voters of Chicago*, 965 F. Supp. 2d at 1013. Like all other federal courts that the parties and the Court have identified as having confronted this issue, the Court concludes that, because McHugh's alleged discrimination is based on non-suspect classifications, the burden remains on Plaintiffs to "negate any reasonably conceivable state of facts that could provide a rational basis for the challenged classification." *Nassau & Suffolk Cnty. Taxi Owners Ass'n,*, 336 F. Supp. 3d at 77. Plaintiffs have failed to meet that high burden.

Plaintiffs nevertheless argue that the Plan in general, and specifically the "swapping" of Districts 4 and 5, is not rationally related to any legitimate state interest. *See* ECF No. 26 at 12 (arguing that because the swap of Districts 4 and 5 "has nothing to do with and was not itself an act of redistricting . . . Defendants have no rational basis or legitimate governmental interest for having renumbered the districts"). The Court disagrees. The Amended Complaint has not plausibly negated "every conceivable basis which might support" the swapping of Districts 4 and 5 in the Plan. *See Nassau & Suffolk Cnty. Taxi Owners Ass'n*, 336 F. Supp. 3d at 77. One possible rational basis is the Town's interest in regulating its elections. *See Credico v. N.Y. State Bd. of Elections*, 751 F. Supp. 2d 417, 421 (E.D.N.Y. 2010) (noting that federal courts have long held that states have an "important interest in regulating [their] election scheme[s]"). Additional rational bases are laid out in the Final Report itself, which lists a number of governmental interests furthered by the "swap" of Districts 4 and 5, including "to follow public comments

17

submitted in-person and online" and to "create a new Asian minority majority council district (district 4)."[12]  ECF No. 1 at 30.  Given the strong presumption of validity afforded to lawmakers under rational basis review, that is all that is required.  *Nassau & Suffolk Cnty. Taxi Owners Ass'n*, 336 F. Supp. 3d at 77.

Accordingly, because the swapping of Districts 4 and 5 survives rational basis review, McHugh has failed to state a claim under the Equal Protection Clause.

### B.     Due Process Clause

Plaintiffs' second federal claim contends that Defendants violated McHugh's substantive due process rights under the Due Process Clause.  Am. Compl. ¶¶ 81–87.  Specifically, "Plaintiffs . . . assert an impairment of a fundamental right, the right to vote."  ECF No. 31 at 5.[13]

Defendants argue that the Court should assess McHugh's Due Process claim using a substantive due process framework.  ECF No. 30 at 4.  To find that Defendants impaired McHugh's substantive due process right to vote, the Court would have to find "both . . . fundamental unfairness in the election process and a finding of *intentional* state conduct directed at impairing a citizen's right to vote."  *Kosinski*, 614 F. Supp. 3d at 47 (emphasis added).  Plaintiffs argue that the claim is better suited to the *Anderson-Burdick* standard of review,[14] ECF No. 31 at 5, which is "a flexible test that aims to balance citizens' constitutional right to vote

---

[12]     The Supreme Court has recently reaffirmed that the creation of majority-minority election districts is a legitimate state interest in redistricting to maintain compliance with Section 2 of the Voting Rights Act.  *See Allen v. Milligan*, 143 S. Ct. 1487, 1511–12 (2023).

[13]     Plaintiffs are not alleging a violation of procedural due process.  *See* ECF No. 31 at 5.

[14]     The *Anderson-Burdick* test is derived from two Supreme Court cases:  *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

18

against states' legitimate interests in regulating elections," and would place a less demanding

burden on McHugh to demonstrate his claim. *Common Cause/New York v. Brehm*, 432 F. Supp.

3d 285, 309 (S.D.N.Y. 2020); *see also Kosinski*, 614 F. Supp. 3d at 47 n.13 (discussing the

differences between the two tests).

Neither the parties, nor the Court, have identified a Second Circuit case that addresses

whether the *Anderson-Burdick* test applies to challenges to redistricting plans.  However, the

Third Circuit recently concluded, after an extensive analysis, that for the *Anderson-Burdick* test

to apply, the challenged law must "primarily regulate the mechanics of the electoral process."

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138 (3d Cir. 2022).  The Court finds the standard

articulated by the Third Circuit in *Mazo* persuasive.

Here, Plaintiffs argue that McHugh's fundamental right to vote was violated, "when,

following its successful exercise, *i.e.*, electing one's preferred candidate to represent [him] in

their district, [he] had that representation almost immediately taken away from [him] . . . .  [His]

vote, in fact, did not count after all and was effectively nullified."  ECF No. 31 at 5.  In essence,

Plaintiffs complain that, *after* McHugh voted, he was moved into a different District.  Because

these allegations do not concern the "mechanics of the electoral process," *Mazo*, 54 F.4th at 138,

the Court finds that the *Anderson-Burdick* test is not applicable and will assess the Town

Defendant's challenge using a substantive due process framework.

Under that framework, the Amended Complaint fails to establish plausibly a violation of

McHugh's substantive due process right to vote.  Plaintiffs have not plausibly alleged that

Defendants undertook "*willful* conduct [to] undermine[] the organic processes by which

candidates are elected."  *Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) (emphasis

added).  The Town Defendants did not voluntarily decide to redistrict, the Town code *requires*

that the Town Board redistrict every 10 years, *see* North Hempstead Town Code § 15A-1, and

any redistricting means that some individuals will have the representative they voted for in the

last election "taken away" as they are moved into a new District.  By obeying the Town code and

redrawing the District Maps, the Town Defendants certainly impacted McHugh, but these

allegations do not plausibly establish that such an action constituted "*intentional* state conduct

directed at impairing [McHugh's] right to vote."  *Shannon*, 394 F.3d at 96 (emphasis added).

      Accordingly, McHugh's Due Process claim is dismissed.

### III.    State Law Claims

      Because the Court herein dismisses Plaintiffs' federal claims, only Plaintiffs' state law

claims under MRHL §§ 10 and 23 and the New York State Constitution remain.[15]  The Court,

however, declines to exercise supplemental jurisdiction over those claims.  "District courts may

use their discretion in deciding whether to exercise supplemental jurisdiction over state law

claims after dismissing a plaintiff's only federal claims, so long as the federal claims were not

dismissed for lack of subject matter jurisdiction."  *Probiv v. PayCargo LLC*, No. 22-cv-2907,

2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023); *see also* 28 U.S.C. § 1367(c)(3) ("The district

courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court

has dismissed all claims over which it has original jurisdiction . . . .").  Accordingly, the Court

---

[15]     Because the Court has found that Plaintiff McHugh has standing, it could choose to exercise supplemental jurisdiction over the other Plaintiffs' state law claims.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (holding that courts may exercise diversity jurisdiction over one plaintiff who meets the amount in controversy requirement and supplemental jurisdiction over other plaintiffs who do not); 28 U.S.C. 1367 ("[S]upplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses those claims without prejudice.

### IV.    Dismissal With Prejudice

The Court finds that dismissal with prejudice is warranted for McHugh's Equal Protection and Due Process claims.[16]  Courts have found that dismissal with prejudice is warranted where a party has been granted an opportunity to replead after being made aware of legal deficiencies in the complaint but fails to cure those deficiencies.  *See, e.g.*, *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 147 n.7 (2d Cir. 2022) (affirming dismissal with prejudice where motion to dismiss filed before complaint had been amended); *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, No. 20-cv-1602, 2022 WL 4599203, at *21 (D. Conn. Sept. 30, 2022) (dismissing complaint with prejudice where court had "already granted [plaintiff] leave to amend the deficiencies in its Amended Complaint, which repleading did not cure").  Plaintiffs filed the Amended Complaint after the Town Defendants filed the Motion.  *See* ECF Nos. 27–28.  The Court finds that "nothing in the record suggests that another complaint could remedy the legal deficiencies."  *In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-cv-3721, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020).  Accordingly, the Court dismisses McHugh's Equal Protection and Due Process claims with prejudice.

---

[16]    All the other Plaintiffs' claims are dismissed without prejudice, as "[d]ismissal for lack of subject matter jurisdiction must be without prejudice."  *J. J. Cranston Constr. Corp. v. City of N.Y.*, 602 F. Supp. 3d 373, 379 (E.D.N.Y. 2022); *see also Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

V.      **Claims Against the Nassau County Board of Elections**

Defendant Nassau County Board of Elections takes no substantive position on the

Motion.  ECF Nos. 20, 25.  "[H]owever, a district court has the power to *sua sponte* dismiss

claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been

given an opportunity to be heard."  *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207,

232 (E.D.N.Y. 2020).  Here, the Court finds that:  (i) all Plaintiffs, except McHugh, have failed

to establish they have standing to challenge the alleged "swapping" of Districts 4 and 5, and (ii)

as to McHugh, he has failed to allege plausibly that the "swapping" of Districts 4 and 5 violated

either the Equal Protection or Due Process Clauses of the Fourteenth Amendment.  These

findings are true for all Defendants, not just the Town Defendants.  Furthermore, Plaintiffs have

had a fair opportunity to be heard on these issues, including supplemental briefing, *see* ECF No.

31.  Therefore, the claims against the Nassau County Board of Elections are dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Motion is GRANTED.  The Clerk of Court is respectfully

directed to close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
            July 13, 2023

22
